**Jeffrey SCHONBERGER & Geraldine Rebach, Petitioners**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

No. 06–AA–1454.

District of Columbia Court of Appeals.

Argued Dec. 12, 2007.

Decided Jan. 10, 2008.

Jeffrey Schonberger, pro se, with whom Andrea C. Ferster, Washington, DC, was on the brief, for petitioners.

Donna A. Murasky, Senior Assistant Attorney General, with whom Linda Singer, Attorney General for the District of Columbia at the time, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General, were on the brief, for respondent.

Before WASHINGTON, Chief Judge, and FARRELL and REID, Associate Judges.

FARRELL, Associate Judge:

The petitioners seek review of a decision of the District of Columbia Board of Zoning Adjustment (BZA or Board) denying their appeal from the issuance of a building permit for construction of a detached garage with a second-story dwelling unit that faces an alley behind their homes in a single family residential district. They argue chiefly that the two-story structure violates the zoning regulations because it is located within the "required rear yard" of the home it serves. We hold that the BZA's interpretation of the regulations as permitting construction of the garage adjacent to the alley was proper, and affirm.

## I.

The lot to which the disputed permit relates is located at 5362 27th Street, N.W., in an R–1–B zoned district.[1] Petitioners Schonberger and Rebach reside at 5341 and 5343 28th Street, N.W.; their lots are separated from the 27th Street lot by a rear alley fifteen feet wide. In 2003, an affiliate of homebuilder Zuckerman

Brothers, Inc., purchased and subdivided an undeveloped parcel of land on 27th Street. In October of that year, the Department of Consumer and Regulatory Affairs (DCRA) issued a building permit for a single family dwelling and a detached garage on the lot at 5362 27th Street. The approved plans called for a two-story garage adjacent to the alley, with a parking area on the first level and a studio apartment on the second level. After receiving complaints from the petitioners, however, Zuckerman Brothers agreed instead to build, and built, a single story garage on the lot.

In 2005, Matthew and Amy Epstein bought the 27th Street property through a Trust, and in July of that year informed the petitioners of their intent to add a second story to the garage. The Epsteins did not initially apply for a new building permit, but posted a copy of the October 2003 permit and began construction of the addition. In August 2005, the petitioners filed an appeal with the BZA from the original permit, and meanwhile the DCRA issued a stop work order; the next day, however, DCRA issued a revised permit allowing the Epsteins to complete the addition according to the 2003 plans.[2] As completed, the garage with second story is more than twenty-five feet from the back of the Epsteins' house, eight feet from their rear lot line, fifteen and a half feet from the center line of the alley, and more than eight feet from each side lot line. The first story consists of the original garage, which opens onto the alley, and the

---

1. R–1 zoned districts are residential areas where the primary use is single family detached dwellings. See 11 DCMR § 200.1 (2003). A higher density of residential development is permitted in an R–1–B district than in an R–1–A district. See id. § 200.3.

2. The petitioners attempted to amend their appeal to include the revised permit. The

BZA determined that the October 2003 permit contained the relevant zoning decision, and excused the petitioners' belated appeal challenging it. We agree that in the circumstances the appeal was timely, thus presenting no issue of this court's jurisdiction. See Sisson v. District of Columbia Bd. of Zoning Adjustment, 805 A.2d 964, 971 (D.C.2002).

second story is a dwelling area for the Epsteins' domestic employee.

## II.

■ The zoning regulations provide that, in an R–1–A or R–1–B district, "an accessory private garage" may include "a second story used for sleeping or living quarters of domestic employees of the family occupying the main building." 11 DCMR § 2500.5.[3] The proviso here at issue, however, is that a "two (2) story accessory building ... shall not be located within the required rear yard." *Id.* § 2500.6. The required rear yard in an R–1–B district is one having a "minimum depth" of twenty-five feet. *Id.* § 404.1. As explained, the garage with a second story which the Epsteins built is located more than twenty-five feet from the rear of their house, thus appearing to meet the limitation of § 2500.6.

As they did in their BZA appeal, however, the petitioners argue that the two story structure evaded the "required rear yard" limitation only by virtue of faulty measurement. They maintain that proper measurement of the twenty-five feet constituting an R–1–B required rear yard would begin from the rear lot line and extend into the lot interior toward the rear of the main building, not vice-versa. They argue that this is the direction of measurement reflected in the zoning regulations as a whole and the only one compatible with the purpose of the regulations to "creat[e] a rear lot line set back as a buffer to a neighboring property" (in this case the petitioners')—not "a buffer behind a building" such as the Epstein's dwelling (Br. for Pet. at 13). Measuring the required rear yard in that manner (*i.e.*, as requiring a twenty-five foot buffer counting back from

the Epsteins' rear lot line) means that the two story garage is in violation of § 2500.6, the petitioners argue.

The Board rejected this argument (a) as inconsistent with the terms "rear yard" and "depth of" rear yard as they are defined in the regulations and (b), since the Epsteins' garage concededly opens onto the alley, as confusing the notion of a rear yard with a "front yard," the latter being something "the Zoning Regulations do not require in any zone district." The "25–foot open buffer area" required by § 404.1, the Board concluded, is one "between a dwelling and its two-story accessory building"; conversely, "[i]t would make no sense to require the garage to have a rear/front yard of 25 feet between it and the alley, necessitat[ing] a paved driveway of 25 feet to reach the alley."

## III.

■ "On questions relating to the interpretation of the zoning regulations," this court must defer to the Board's reading unless it is "plainly erroneous or inconsistent with the regulations." *Davidson v. District of Columbia Bd. of Zoning Adjustment,* 617 A.2d 977, 981 (D.C.1992) (citations omitted). The petitioners' arguments for reversal do not satisfy that test. To begin with, the regulations define a "yard, rear" as "a yard between the rear line of a building ... and the rear lot line, except as provided elsewhere in [Title 11]," and define the "depth of" a rear yard as "the mean horizontal distance between the rear line of a building and the rear lot line, except as provided elsewhere...." 11 DCMR § 199.1. The natural sense of these words is to establish both the starting point for measuring "distance" as the

---

3. The petitioners argued below that the dwelling area would not in fact be used for a domestic employee. The BZA rejected this argument, and the petitioners do not renew it on appeal.

"rear line of a building," in this case the Epsteins' dwelling, and a direction of measurement, *i.e.*, toward the rear lot line. At least, the Board could rationally interpret them that way. And the definitional exceptions ("except as provided elsewhere") further support this reading. For example, 11 DCMR § 534, governing required rear yards in Special Purpose (SP) Districts, provides that "[i]n an SP District, the depth of the rear yard required . . . may be measured as follows: (a) Where a lot abuts an alley, from the center line of the alley to the rear wall of the building or other structure . . .; [but] (b) Where a lot does not abut an alley, the depth of the rear yard shall be measured as specified in the definition of rear yard in Section 199.1." Subsection (a), in other words, specifies an instance in which something other than the rear of the main building on a lot is (or "may be") the starting point for measurement of the required rear yard, while subsection (b) requires application of the general rule of measurement embodied in the definition of rear yard. *See also* § 774.9(a) & (b) (Commercial District) (reflecting the same distinction).

Petitioners argue that the sheer number of settings (including also, for example, "through lots" in Residential Districts and rear yards in Industrial Districts) where the regulations envision measuring setbacks by starting from the center line of a street or alley yields the proper rule of measurement for R–1–B districts, too. But, for the reasons already stated, the Board was not bound to agree. Rather, it could fairly read each of these provisions as the "except[ions]" to the rule referenced in the definitions of "rear yard" and "depth of" rear yard, the more so since nearly all the exceptions are permissive ("the depth . . . may be measured") and two of them expressly make the default rule of measurement, as it were, the one "specified in the definition of rear yard in § 199.1." Moreover, as the Board reasoned, measuring the required rear yard from the back property line inward would do havoc with ordinary language, since it is the "front" of the garage structure, not its rear, that faces the alley.

■ In sum, the most that can be said for the petitioners' reading is that the regulations are ambiguous (or silent) regarding how required rear yards are to be measured in R–1 districts. But it is in just such cases that this court defers to a reasonable interpretation by the agency charged with administering the regulations. *See, e.g., Goldsten v. District of Columbia Real Estate Comm'n*, 709 A.2d 1178, 1180 (D.C.1998). The BZA's reading has the additional virtue of being consistent with its only prior precedent on point cited to us. See Applic. No. 16696 of Craig and Ann Goodman (Feb. 4, 2002) (no rear yard variance required for second-story addition to garage located sixty-seven feet from main dwelling in residential district requiring twenty-foot rear yard).[4]

The petitioners' argument that the Board's reading thwarts a key purpose of the zoning regulations to protect adjacent property owners is unpersuasive. The regulations are intended, among other things, to "provide adequate light and air." 11 DCMR § 101.1. Forcing the Epsteins' two-story garage to be situated closer to

---

4. While the petitioners accuse the BZA of "flip-flopping" in its interpretations of the "required rear yard," the cases they point to involved structures that required their own rear yard, so that the direction of measurement was of no consequence to the decision.

*See* Appeal No. 17054–A of Henry P. Sailer, October 15, 2004; *Appeal No. 15453 of Tyrus D. Barre, June 28, 1991, aff'd sub nom. Davidson v. District of Columbia Bd. of Zoning Adjustment, supra.*

the main dwelling, as the petitioners' reading entails, would expand the buffer between the garage and properties across the rear alley, but at the same time would shrink the envelope of light and air available to neighbors on either side of the principal dwelling. Moreover, other general purposes of the regulations are to "prevent ... the overcrowding of land" and "create conditions favorable to ... recreation." *Id.* § 101.1(c). These goals would scarcely be promoted by an interpretation further compressing the open space between the Epstein's main dwelling and its accessory structure.

The petitioners' remaining points merit little discussion. They argue that the BZA's reading conflicts with our decision in *Davidson, supra,* but it does not. The issue in *Davidson* was whether a pool house as used—or as designed to be used—was even an accessory building rather than an independent structure requiring its own rear yard. *See* 617 A.2d at 981–84. No question of the direction in which a required rear yard is measured was presented for decision. The petitioners further argue that the required rear yard must be construed as a set-back from the rear lot line because the Epstein's structure was no longer a "garage" once it acquired a second story. See Reply Br. for Pet. at 12 ("The regulations make clear that the 'two-story accessory building' permitted under [§ ]2500.6 is not a 'garage' "). The language of §§ 2500.5 and 2500.6 refutes this argument, because "an accessory private garage" with a second story housing domestic employees is still a "two-story accessory building," subject to the particular limitations that it "not be located within the required rear yard" and meet side lot set-back requirements as well. *Id.* § 2500.6. The petitioners offer no textual reason why the regulations governing garages, including the requirement that one opening onto an alley be set back

at least twelve feet from the alley, cease to apply to a garage with a second story apartment. *See id.* § 2300.2(b). Even if sound policy suggested that a building with dwelling units upstairs should be situated farther from a rear lot line than a single story garage, the BZA's conclusion that the regulations do not require this is reasonable, and must be upheld.

Finally, the petitioners argue that the space between the Epsteins' house and the garage is a "court" and thus cannot be the required rear yard separating the two structures. *See id.* § 199.1 (defining a yard as an exterior space "other than a court"). But a court is defined partly as a space "bounded on two ... or more sides by the exterior walls of *the* building...." *Id.* (emphasis added). The Board reasonably read this to mean that a court is bounded by two or more walls of a single building (not the rear walls of two separate buildings), so that the space separating the Epsteins' dwelling from the garage was indeed a rear yard.

*Affirmed.*