### DISTRICT OF COLUMBIA OFFICE OF HUMAN RIGHTS, Appellant/Cross–Appellee,

v.

### DISTRICT OF COLUMBIA DEPARTMENT OF CORRECTIONS, Appellee/Cross–Appellant,

and

### Deborah J. Bryant, Appellee.

Nos. 09–CV–457, 09–CV–881.

District of Columbia Court of Appeals.

Argued Sept. 21, 2010.
Decided April 5, 2012.

Holly M. Johnson, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellant/cross-appellee and appellee/cross-appellant.

Robert M. Adler, Washington, DC, for appellee.

Before BLACKBURNE–RIGSBY and OBERLY, Associate Judges, and RUIZ, Associate Judge, Retired.*

* Judge Ruiz was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on September 1, 2011.

RUIZ, Associate Judge, Retired:

This appeal arises from a protracted administrative dispute between appellee, Deborah J. Bryant, and her former employer, the District of Columbia Department of Corrections (DOC), regarding allegations of sexual and racial discrimination. In 1992, the District of Columbia Office of Human Rights (OHR) first determined that the DOC had discriminated against appellee in violation of the District of Columbia Human Rights Act (DCHRA), D.C.Code § 2–1401.01 *et seq.* (2001). Over the next seventeen years, the matter worked its way through the administrative process, culminating in the Superior Court's February 2009 order awarding appellee back pay with interest. On appeal, both DOC and OHR challenge the Superior Court's award of interest on appellee's back pay award. We hold that OHR has authority to award interest on back pay awards and affirm the judgment of the Superior Court remanding the matter to OHR for reconsideration of appellee's request for interest, in light of the circumstances of the case, recognizing and exercising its authority to award such interest.

## I. Facts

Appellee began work as a clerk-typist at the Occoquan facility of the DOC's Lorton Correctional Complex in August 1982. In June 1987, appellee was temporarily reassigned to the Modular facility to work as the secretary-typist for the warden of the Occoquan facility, John Lattimore. Although the secretary-typist position was grade DS–7, appellee retained her clerk-typist grade DS–5 pay. Shortly after appellee was reassigned, Lattimore began to make sexual comments to her, which appellee rebuffed or ignored.[1] Subsequently, as appellee sought promotion to the DS–7 level, Lattimore began criticizing her work performance, despite having recently given her an excellent performance evaluation. In September 1988, appellee was transferred out of Lattimore's office without explanation and moved to a position with fewer responsibilities and less significant duties. Lattimore implied to appellee that her transfer was punishment for not submitting to his advances.[2]

Appellee's efforts to vindicate her rights under the DCHRA have been arduous, and we set them out in some detail. In March 1990, appellee filed a complaint with the OHR alleging sexual and racial discrimination by Lattimore and the DOC. In February 1992, OHR found probable cause to believe that DOC had engaged in racial and sexual discrimination against appellee in violation of the DCHRA. OHR issued a Summary Determination and Order in September 1992. The order determined that appellee was entitled to receive a retroactive promotion to the DS–7 level, back pay, and medical expenses, but denied damages for emotional distress and attorney's fees. Appellee and DOC both appealed the decision to the Office of City Administrator (OCA). On January 31, 1994, OCA affirmed OHR's finding of probable cause to support the sexual discrimination claim, but reversed OHR's determination of probable cause for the racial discrimination claim. OCA also denied appellee's appeal for compensatory damages and attorney's fees, stating that District employees were not entitled to such damages.

---

1. Lattimore told appellee that "he was in love" with her, asked her to "sit on his lap so he could play Santa," and commented that appellee "had a nice ass or derriere."

2. Lattimore told another employee, in appellee's presence, that "if [appellee] would do the right thing, she could have anything she wanted," which appellee understood to mean that she would be promoted if she submitted to Lattimore's advances.

Pursuant to OCA's order, OHR issued a new order in February 1994, revising its initial determination of race-based-discrimination and overruling its previous grant of a retroactive promotion and back pay. Appellee appealed the new order to the Superior Court, which remanded the case to OHR in June 1997. The court ordered OHR to reassess whether there was sufficient evidence of racial discrimination, whether the racial discrimination claim had been timely filed, and whether appellee was entitled to a retroactive promotion and back pay pursuant to OHR's finding of sexual discrimination.

In December 1997, OHR issued a Determination on Remand, holding that appellee's racial discrimination claim was not timely filed, but awarding her a retroactive promotion to a DS-7 pay grade and back pay for the sexual discrimination claim. That order was appealed to the Superior Court, which again remanded the case to OHR in June 1998. This time, the court ordered OHR to reexamine the award of a retroactive promotion and back pay under the correct legal standard, and charged OHR with making a factual determination on the amount of damages.

At the same time that these administrative proceedings were ongoing before the District of Columbia agencies and the Superior Court, appellee was also a claimant in a class action filed under federal law before the United States District Court for the District of Columbia, *Bessye Neal v. District of Columbia Dep't of Corrections,* No. 93-2420 (D.D.C.1995). The *Bessye Neal* class was open to all female DOC employees who initiated sexual harassment claims arising between April 1, 1989, and July 22, 1997. Appellee qualified as a class member by showing that she had been the target of sexual harassment and retaliation by another D.C. employee, Everett Simms, a DOC staff psychologist, from about 1992 to 1994. A December 1998 consent decree awarded appellee a retroactive promotion to a DS-9 staff assistant position and back pay. The court barred further litigation of claims covered by the consent decree, i.e., claims arising between April 1, 1989—July 22, 1997.

The administrative matter before OHR lay dormant for five years, until September 2003, when OHR issued a Partial Determination on Remand, directing that the record be reopened to make a factual determination as to the amount and nature of the damages owed to appellee. DOC moved to vacate the proceeding, arguing that the claim was precluded by the *Bessye Neal* settlement. OHR denied the motion to vacate in October 2003—appellee's claim before OHR arose from acts outside the *Bessye Neal* decree—and an evidentiary hearing was held in November 2004. In November 2006, OHR issued a recommended decision on the amount of damages owed to appellee. Appellee filed a Proposed Substitute Order and Findings; DOC did not respond to appellee's proposed order.

On June 15, 2007, OHR issued a Final Decision and Order on Damages. OHR ordered DOC to pay appellee retroactive back pay, in step with likely promotions to levels DS-7, DS-9, and DS-11, from October 1, 1988, to August 2001. The Order rejected appellee's request for interest on the back pay award, finding that OHR did "not have authority to issue interest on [the] back pay award" because interest on judgments against the District of Columbia are allowed only "when authorized by law." OHR reasoned that "[t]here has been no law or regulation that authorizes interest[ ] on back pay for District employees who file claims against their agency under the Human Rights Act." In so reasoning, OHR contrasted public employees with "private sector employees who pursue their Human Rights Act claim through the

District of Columbia Commission on Human Rights," where they "may seek interest on their awards pursuant to 4 DCMR § 21[4].5 (1995)." Thus, OHR concluded, "[b]ecause [appellee's] claim is not before the Human Rights Commission, she is not eligible to receive interest[ ] on any back pay award." Appellee filed a motion for reconsideration of OHR's denial of interest and attorney's fees.

OHR affirmed its order in an August 2, 2007, letter to appellee, which again denied her request for interest on the back pay award and for attorney's fees. Both sides challenged OHR's decision in Superior Court. In its Petition for Review of Agency Decision, DOC argued that OHR's Final Decision was not supported by substantial evidence. In her Cross–Petition, appellee claimed OHR erred in failing to award interest and attorney's fees.

We now come to the subject of this appeal. On February 26, 2009, the Superior Court issued an order partially reversing OHR's Final Decision and Order on Damages. The court determined that OHR's final decision compensating appellee for economic damages (back pay) for sexual discrimination was supported by substantial evidence, and that OHR properly denied attorney's fees to appellee. However, the court reversed OHR's denial of interest on the damages award, ruling that OHR erroneously concluded that it had no authority to award interest. Specifically, the trial court interpreted the phrase "when authorized by law" as used in D.C.Code § 28–3302, as referring to both case law and statutory law, and noted that "the equitable doctrine of making one

whole" and case law [3] authorized OHR "to award prejudgment interest on a back pay award in cases where it is appropriate to do so." The trial court also found that the award of interest was authorized in light of the broad remedial purpose of the regulatory framework governing appellee's claim, as well as its similarity to Title VII of the Civil Rights Act of 1964, which allows interest on back pay awards. Thus, the court awarded appellee "prejudgment interest at a rate of 4% per annum on each of the back pay awards included in OHR's Final Decision and Order, to be calculated incrementally from the time each portion of each award was withheld." DOC and OHR timely appealed the award of interest on the back pay award.[4] As we now discuss, we agree with the trial court that OHR has authority to award interest on back pay, and remand the case to OHR to exercise that authority in this case.

## II. OHR's Authority to Award Interest on Backpay under the DCHRA

■ DOC and OHR contend that the Superior Court erred in reversing OHR's determination that the agency has no authority to award prejudgment interest on the back pay award, arguing that OHR reasonably interpreted the DCHRA in a manner that does not conflict with the language or purpose of the statute. Appellee responds that the court properly reversed OHR's determination denying interest payments because the Human Rights Act's "regulatory framework" calls for a broad interpretation of the types of damages "authorized by law."

---

3. The trial court relied on *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229 (D.C. 1990), and *Duggan v. Keto*, 554 A.2d 1126 (D.C.1989).

4. Appellee has not appealed the Superior Court's affirmance of OHR's denial of her

request for attorney's fees, which, the court held, "is based firmly in the statutory scheme and must be upheld." DOC does not challenge the Superior Court's determination that OHR's award of back pay was supported by substantial evidence. We do not decide either issue.

■ "We review a Superior Court ruling on an [agency] decision in the same fashion in which we would review an [agency] decision if it were appealable directly to us." [5] *Bagenstose v. District of Columbia Office of Employee Appeals*, 888 A.2d 1155, 1157 (D.C.2005); *see Kennedy v. District of Columbia*, 654 A.2d 847, 853 (D.C.1994) ("[O]ur primary task is not simply to review the Superior Court's decision for error or abuse of discretion. Rather, we approach the case as if the appeal arose directly from the administrative agency." (footnote omitted)). We must examine the agency record to determine whether there is substantial evidence to support the agency's findings of fact and whether the agency's action was "arbitrary, capricious, or an abuse of discretion." *Bagenstose*, 888 A.2d at 1157; *see* D.C.Code § 2–510(a)(3) (2001). However, "[w]here questions of law are concerned, [we] review[ ] the agency's rulings *de novo* " because "we are presumed to have the greater expertise when the agency's decision rests on a question of law, and we therefore remain 'the final authority on issues of statutory construction.'" *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs.*, 683 A.2d 470, 472 (D.C.1996) (quoting *Harris v. District of Columbia Office of Worker's Comp.*, 660 A.2d 404, 407 (D.C.1995)). Although our review of legal issues (such as interpretation of statutes and regulations) is *de novo*, we defer to the agency's interpretation of the statute and regulations it is charged by the legislature to administer, unless its interpretation is unreasonable or is inconsistent with the statutory language or purpose. *See Foggy Bottom Ass'n v. District of Columbia Zoning Comm'n*, 979 A.2d 1160, 1167 (D.C.2009). "When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order." *1330 Connecticut Ave. Inc. v. District of Columbia Zoning Comm'n*, 669 A.2d 708, 714–15 (D.C.1995) (internal quotation marks omitted); *see Schonberger v. District of Columbia Bd. of Zoning Adjustment*, 940 A.2d 159, 162 (D.C.2008) (deferring to agency interpretation where regulations were ambiguous or silent). That deference is based on "the agency's presumed expertise in construing the statute it administers." *United States Parole Comm'n v. Noble*, 693 A.2d 1084, 1096 (D.C.1997), *adopted on reh'g*, 711 A.2d 85 (D.C.1998) (en banc). Another reason for judicial deference is respect for separation of powers, based on the legislature's choice of an agency to implement a statute by issuing regulations. *See Continental Airlines, Inc. v. Department of Transp.*, 843 F.2d 1444, 1454 (D.C.Cir.1988) (stating that legislative choice also presumes greater expertise in the agency than in the court). But even when deference to agency expertise would normally be owed, "plain statutory language or clear legislative history" may require us to reject an agency's interpretation. *United States Parole Comm'n*, 693 A.2d at 1097–98. And where the issue "is purely one of law not involving an agency's attention to gaps or ambiguities in the statute it administers or to technical applications," we do not defer to an agency interpretation. *Id.* at 1098. In this case, we conclude that OHR's interpretation that it lacks authority to award interest on back pay under the DCHRA and implementing regulations is incorrect as a matter of law, and, therefore, unreasonable. Thus, it is not owed deference by the court.

The DCHRA makes it unlawful for an employer "[t]o fail or refuse to hire, or to

---

**5.** It is therefore immaterial whether the parties presented to the Superior Court their arguments concerning the proper scope of judicial deference to the agency's interpretation.

discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion...." D.C.Code § 2–1402.11(a)(1). For complaints brought against the District of Columbia government, a District employee may opt to pursue an administrative remedy or file a civil complaint in court. *Id.* § 2–1403.03(b).[6] Section 2–1403.03(a) directs the Mayor to "establish rules of procedure for the investigation, conciliation, and hearing of administrative complaints filed against District government agencies, officials and employees alleging violations of [the DCHRA]."[7] Pursuant to that authority, OHR promulgated 4 DCMR § 100 *et seq.*

(2010), regulations to "govern the processing of any complaint involving discrimination ... in connection with any aspect of District government employment." 4 DCMR §§ 101.1, 102.1. Section 120.1 of these regulations authorizes a variety of remedies upon a finding of discrimination against a District employee which "shall" include—but "need not be limited to"— retroactive promotion and back pay for up to two years prior to the filing of the complaint; priority consideration for promotion, before consideration of other candidates; "cancellation of an unwarranted personnel action and restoration of withheld benefits"; and expungement of unwarranted disciplinary actions from the agency's records. *Id.* § 120.1.[8]

6. This election of remedies was added to the DCHRA in 2002 to provide District of Columbia employees with "the same rights as private [employees] in choice of remedy." Human Rights Amendment Act of 2002, 2002 D.C. Laws 14–189 (2002). The amendment added a new subsection to section 303 of the DCHRA (D.C.Code § 2–1403.03), allowing an election of remedies for aggrieved District employees. *Id.* § 2–1403.3(h). The Council subcommittee report accompanying the amendment explained that the new subsection was "adopted by the Subcommittee to level the playing field for District employees and private [employees]" with regard to the exhaustion of administrative remedies. D.C. Council, Report on Bill 14–132, the "Human Rights Amendment Act of 2002," at 5 (Mar. 29, 2002). The report continued:

The Subcommittee found that for many complaints of discrimination, the administrative remedy through the Office of Human Rights will be favored, especially since the services of a private attorney are not required and any damages awarded would not be eroded by attorney's fees. The Subcommittee also considered that the judicial forum may be a better initial forum for cases arising with alternative causes of action as well as those involving complex legal issues, larger potential awards, and immediate injunctive relief which may only be granted by a court.

*Id.* at 5–6.

7. In contrast, the DCHRA establishes in the statute itself a remedial scheme for claims against private employers. *See* D.C.Code § 2–1403.13(a). If the Commission on Human Rights determines that an employer "has engaged in an unlawful discriminatory practice or has otherwise violated the provisions of [the DCHRA]," the Commission may take actions, including "but not limited to": "[t]he hiring, reinstatement or upgrading of employees, with or without back pay"; "[t]he payment of compensatory damages"; "[t]he payment of reasonable attorney fees"; and "[t]he payment of civil penalties[.]" *Id.* The accompanying regulations explain that it is the intent of the Commission "to insure payment to persons aggrieved by unlawful discrimination of all expenses and damages fairly and reasonably attributable to unlawful discriminatory acts or practices." 4 DCMR § 200.2 (2010). Thus, the regulations also permit the payment of miscellaneous damages, and require award of interest at 8% per annum on out-of-pocket expenses. *Id.* § 214.5.

8. The regulations were amended in October 2010 (after this case was argued), and the text of 4 DCMR § 120.1, dealing with remedies, now appears in 4 DCMR § 126.1. (4 DCMR § 120 is now entitled "Final Decision of the Director After the Hearing."). The Superior Court and the parties refer to the prior codification at 4 DCMR § 120.1, and so will we. Section 120.1 provided in pertinent part (and § 126.1 currently provides):

■ OHR interpreted the DCHRA and its related regulations as foreclosing the award of interest on an award of back pay to employees of the District of Columbia. Our deference to an agency's reasonable interpretation is such that "[t]o persuade us to reject the [agency's] construction . . . the [challenging party] must show that it is plainly wrong or incompatible with the statutory purpose." *Sawyer Prop. Mgmt. of Md. Inc. v. District of Columbia Rental Hous. Comm'n,* 877 A.2d 96, 103 (D.C. 2005) (first alteration in original) (internal quotation marks omitted). "However, when it appears that the agency . . . did not conduct 'any analysis of the language, structure, or purpose of the statutory provision,' '[i]t would be incongruous to accord substantial weight to [the] agency's interpretation.'" *Proctor v. District of Columbia Dep't of Emp't Servs.,* 737 A.2d 534, 538 (D.C.1999) (alterations in original) (quoting *Mushroom Transp. v. District of Columbia Dep't of Emp't Servs.,* 698 A.2d 430, 433 (D.C.1997), and *Coumaris v. District of Columbia Alcoholic Beverage Control Bd.,* 660 A.2d 896, 899–900 (D.C.1995)). Therefore, we must first determine whether the premise for judicial deference is present here—that is, whether OHR analyzed the language, structure, and purpose of the regulations in light of the governing statute.

In its Final Decision and Order, OHR explained its reasoning for denying interest on the back pay award under 4 DCMR § 120.1 as follows:

OHR finds that it does not have authority to issue interest on back pay awards. Pursuant to D.C. Official Code § 28–3302, interest on judgments or decrees against the District of Columbia are allowed when authorized by law. There has been no law or regulation that authorizes interest[ ] on back pay for District employees who file claims against their agency under the Human Rights Act. In contrast, private sector employees who pursue their Human Rights Act claim through the District of Columbia Commission on Human Rights may seek interest[ ] on their awards pursuant to 4 DCMR § 21[4].5 (1995). Because Complainant's claim is not before the Human Rights Commission, she is not eligible to receive interest[ ] on any back pay award.

OHR's reasoning, although very summary, demonstrates that at a minimum the agency considered statutory and regulatory language and analyzed its structure, by contrasting the regulation for claims against private employers. Hence, even though OHR did not consider the purpose of the regulation and statute, it cannot be said that the "record is barren of any indication that the agency gave any consid-

[T]he agency shall take remedial actions which shall include one (1) or more of the following, but need not be limited to, these actions:
(a) Retroactive promotion, when the record clearly shows that but for the discrimination the employee would have been promoted to a higher grade; provided, that the backpay liability may not accrue from a date more than two (2) years prior to the date the discrimination complaint was filed
. . .
. . . .
(c) Consideration for promotion to a position for which he or she is qualified before

consideration is given to other candidates
. . .
(d) Cancellation of an unwarranted personnel action and restoration of withheld benefits that would have accrued to the employee;
(e) Expunction from the agency's records of any reference to or any record of an unwarranted disciplinary action that is not a personnel action; and
(f) Full opportunity to participate in the employee benefit denied the employee (*e.g.,* training, preferential work assignments, overtime scheduling), or a reasonable substitute.

eration at all to the statutory language or to the structure or purpose" of the regulations. *Coumaris*, 660 A.2d at 900. Thus, OHR's order, however conclusory its reasoning, suffices as an agency interpretation of its regulations. *Cf. Long v. District of Columbia Dep't of Emp't Servs.*, 717 A.2d 329, 332 (D.C.1998) (remanding the case where "the Director adopted the examiner's order virtually without comment and did not interpret the statute or state how it might bear on either of the legal issues now presented on review").

■ Whether the agency's analysis led to a "reasonable interpretation" is a separate matter. Appellants contend that OHR's interpretation is reasonable because § 120.1 of the regulations does not expressly mention interest "either as a component of back pay or as a separate remedy." Thus, they argue, "while OHR might reasonably have interpreted § 120.1 as authorizing the award of prejudgment interest, nothing in the Human Rights Act or its regulations required it to do so." We will defer to an agency's reasonable interpretation "even if a petitioner advances another reasonable interpretation . . . or if we might have been persuaded by the alternate interpretation had we been construing the [regulation] in the first instance." *Smith v. District of Columbia Dep't of Emp't Servs.*, 548 A.2d 95, 97 (D.C.1988). However, we conclude that OHR's analysis was inherently flawed and thus did not lead to a reasonable interpretation of § 120.1. We do not defer to OHR's interpretation because, as we now discuss, it misapplied accepted interpretive criteria in considering the relevant language in the regulations, its reasoning is logically flawed, and it did not consider the purpose of an interest award on back pay in light of the remedial objective of the DCHRA. *See 1303 Clifton St., LLC v. District of Columbia*, 39 A.3d 25, 31–34 (D.C.2012) (refusing to defer to agency's interpretation where the agency failed to

provide a reasoned explanation for its procedural bar and did not show how its interpretation advanced the goals or purposes of the statute at issue).

We begin with the language of § 120.1, which outlines the remedies available to a District employee who has been the subject of unlawful remedial discrimination. The regulation plainly states that OHR "*shall take remedial actions* which *shall include* one (1) or more of the following, but *need not be limited to,* these actions. . . ." 4 DCMR § 120.1 (emphasis added). Notwithstanding the District's argument on appeal that OHR could have, but chose not to, interpret § 120.1 as authorizing interest awards, it is clear from its order that OHR arrived at its interpretation because it felt compelled to do so, as "there has been no law or regulation that authorizes interest." OHR came to that conclusion by misconstruing a mandate ("shall take remedial action which shall include one (1) or more . . .") as a limitation that circumscribes its ability to award interest on back pay awards. In effect, OHR read the language exactly backwards, determining that § 120.1, with its "need *not* be limited to" proviso, actually *did limit* the agency to the specified forms of relief. Such a self-contradictory analysis of plain language does not pass muster as a reasonable agency interpretation. Not only is the limitation imposed by OHR not compelled by the language of the regulation, but it is also contrary to the generous construction we have applied to interpretations of the Act itself, in light of its "sweeping statement of intent" and broad remedial purpose. *Esteños v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 887 (D.C.2008).

Moreover, OHR's analysis is unreasonable in that it is logically flawed. The syllogism supporting OHR's interpretation rests on a major premise that "[p]ursuant

to D.C. Official Code § 28–3302, interest on judgments or decrees against the District of Columbia are allowed *when authorized by law.*" (emphasis added). From this, OHR applies its minor premise—that "[t]here has been no law or regulation that authorizes interest[ ] on back pay for District employees who file claims against their agency under the Human Rights Act"—to conclude that it cannot award interest on the back pay award to appellee. Upon closer inspection, however, the syllogism is invalid because D.C.Code § 28–3302 does not expressly limit OHR's authority to award interest payments. Rather, § 28–3302 merely sets the rate of interest for an aggrieved party when interest is properly awarded as part of a judgment or decree against the District.[9] *See Burke v. Groover, Christie & Merritt,* 26 A.3d 292, 295–300 (D.C.2011). Section 28–3302 provides no support for OHR's conclusion that it lacks authority to award interest on back pay, and its patently incorrect premise undermines OHR's interpretation.

The question remains whether relevant laws prohibit or permit OHR to award interest on back pay. DOC and OHR cite *Kennedy* to argue that the phrase "need not be limited" in Mayor's Order 75–230 § 19(b), 1975 D.C. Stat. 510, 526–27—the precursor to § 120.1, with "virtually identical language"—did not authorize OHR to award "any type of equitable relief." If the *Kennedy* court upheld the denial of attorney's fees and compensatory damages to a District employee, they argue, OHR can likewise reasonably interpret § 120.1 to deny interest here. Our holding in *Kennedy,* however, did not address wheth-

er OHR has authority to award interest on back pay. In *Kennedy,* on petition for rehearing, we held that the court lacked statutory authority to award attorney's fees and compensatory damages to a firefighter who was dismissed from the District of Columbia Fire Department in violation of the DCHRA. *Kennedy,* 654 A.2d at 864. We explained that "[a]lthough it is clear from the language of section 19(b) of Mayor's Order 75–230 that the remedies available to a successful claimant *are not limited* to those enumerated" in the order, it was not clear that the Council intended for recovery of attorney's fees or compensatory damages, "which are quite different *in kind* from the types of remedies specified in section 19(b)." *Id.* (emphasis added). Thus, absent statutory authority, we declined to extend remedies dissimilar to those authorized in § 19(b).[10] Further, we explained that because an award of compensatory damages is "an important form of relief" in and of itself, "we deem[ed] it improbable that the drafters intended such a remedy to be inferred from language which makes no mention of it, especially where other remedies of equal or lesser significance are explicitly enumerated." *Id.*

That the *Kennedy* court denied attorney's fees and compensatory damages because of their dissimilarity to remedies enumerated in § 19(b) sheds scant light on our present discussion because interest is "'an element of complete compensation'" of a back pay award. *Loeffler v. Frank,* 486 U.S. 549, 558, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) (quoting *West Virginia v. United States,* 479 U.S. 305, 310, 107

9. The relevant subsection reads: "Interest, when authorized by law, on judgments or decrees against the District of Columbia, or its officers, or its employees acting within the scope of their employment, is at the rate of not exceeding 4% per annum." D.C.Code § 28–3302(b).

10. The remedies in Mayor's Order 75–230 § 19(b) included, *inter alia,* retroactive promotions with back pay, consideration for promotion, cancellation of any unwarranted personnel actions, and expungement of any records of disciplinary actions. *See Kennedy,* 654 A.2d at 858.

S.Ct. 702, 93 L.Ed.2d 639 (1987)). In *Loeffler*, the Supreme Court held that interest may be awarded to an employee of the United States Postal Service (USPS) who brought a discrimination claim under Title VII of the Civil Rights Act of 1964. *Id.* at 565, 108 S.Ct. 1965. Like the DCHRA, Title VII provides separate avenues for redress for public and private employees—§ 717 of Title VII governs remedies available to public employees and § 706 governs those available to private employees. *Compare* 42 U.S.C. § 2000e–16 (Title VII remedies for public employees), *with id.* § 2000e–5 (Title VII remedies for private employees). The Court dismissed the USPS's argument that interest could not be awarded because § 717 did not explicitly authorize it. *Loeffler*, 486 U.S. at 563, 108 S.Ct. 1965. The Court explained that its analysis started with the "no-interest rule," under which the United States is immune from interest awards absent express congressional approval. *Id.* at 565, 108 S.Ct. 1965. Because Congress had waived the USPS's sovereign immunity, the Court concluded that the "no-interest rule" did not apply and that § 717 allowed recovery of interest on the petitioner's back pay award. *Id.*

The principles articulated in *Loeffler* are instructive for our purposes. The Court explained that the pertinent statute—§ 717 of Title VII, 42 U.S.C. § 2000e–16—did not expressly preclude interest payments, and therefore an interest award could follow the award of back pay, which the statute expressly contemplates. *Id.* at 563, 108 S.Ct. 1965. Here, OHR's reasoning started from a similar (though, as we discussed previously, unsupported) premise that an interest award was unavailable unless expressly authorized by law. As is the case with § 717 of Title VII, the regulation—4 DCMR § 120.1—does not expressly preclude or provide for interest payments. Yet, OHR concluded that it was without authority to award interest.

Such an interpretation, we conclude, is not compelled by any statute or controlling case, and is plainly incompatible with the Court's reasoning in *Loeffler*, 486 U.S. at 558, 108 S.Ct. 1965 and out of step with our reasoning in *Burke*, 26 A.3d at 302, 305–06, that an award of interest is part and parcel of a compensatory award, because its purpose is to preserve the value of the damages awarded. *Id.* (discussing the award of post-judgment and pre-judgment interest). Nothing in the DCHRA or its implementing regulations suggests that OHR has no authority to make an interest award, particularly when it is so inextricably tied to a remedy that OHR is expressly authorized to grant by the regulations. We thus have little difficulty in concluding that the Council would allow interest on a back pay award as a component of the remedy for discrimination made unlawful by the DCHRA. *Cf. Kennedy*, 654 A.2d at 864 (noting that "it is not clear enough" that Council intended the "quite different" remedies of attorney's fees and compensatory damages).

Although we do not easily depart from the "considerable deference" ordinarily owed to an agency's interpretation of the regulations it administers, *see Mushroom Transp.*, 698 A.2d at 432, we do so here because we conclude that OHR's interpretation that § 120.1 disallows interest on all back pay awards is not a reasonable interpretation of the regulation. Where, as here, the special competence of the agency was not required in interpreting the regulation, and the interpretive task is based on purely legal reasoning and consideration of legal authority, the court is the proper arbiter of the meaning of statutory and regulatory language. *See United States Parole Comm'n*, 693 A.2d at 1098. In such a case, "we owe no deference to [the agency's] interpretation." *Foggy Bottom Ass'n*, 979 A.2d at 1165. We, therefore, conclude that OHR has au-

thority, pursuant to § 120.1, to award interest following the award of back pay.

## III. Remand

We affirm the judgment of the Superior Court remanding the matter to OHR. On remand, OHR should exercise its authority under § 120.1 to award interest in light of the purpose of an interest award in conjunction with an award of back pay. We do not mean to suggest that an interest award, though the norm, will be required in every case before OHR in which there is a back pay award. However, when a claimant has endured a particularly long and procedurally complicated ordeal, as here, interest is particularly appropriate to compensate the claimant for the lost time-value of her recovery. OHR should award interest on back pay unless there is good reason for withholding an interest award, and should state with specificity its reasons for withholding interest as a component of back pay. OHR may set a rate of interest—consistent with applicable statutory requirements [11]—that takes into account the purpose of fully compensating the claimant for the lost value of her recovery due to the passage of time and other relevant considerations.

*So ordered.*

---

**11.** *See* D.C.Code § 28–3302(b), *supra*, note 9, imposing a 4% cap on interest on judgments against the District of Columbia.