*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-SP-117

CHERYL RIVERA, APPELLANT,

V.

JACK LEW, *et al.*, APPELLEES.

On Certification
from the United States Court of Appeals
for the District of Columbia Circuit
(Case No. 13-5222)

(Submitted March 13, 2014          Decided September 11, 2014)

*Ronald C. Machen Jr.*, United States Attorney, and *R. Craig Lawrence* and *Alan Burch*, Assistant United States Attorneys, filed a motion for summary affirmance on behalf of the federal appellees.

*Lonie Anne Hassel* and *Julia E. Zuckerman* filed a motion for summary affirmance on behalf of appellees District of Columbia Retirement Board and District of Columbia Police Officers' and Firefighters' Retirement Plan.

*Raymond S. Dietrich* filed an opposition to the motions for summary affirmance on behalf of appellant.[1]

---

[1] These motions and the opposition were filed in the United States Court of Appeals for the District of Columbia Circuit. The parties have filed a joint statement advising that these papers and the record in the United States District Court provide this court with all that it needs to decide the certified question. *See* D.C. App. R. 22 (a)(2).

Before WASHINGTON, *Chief Judge*, and FISHER and EASTERLY, *Associate Judges*.

FISHER, *Associate Judge*:  Pursuant to D.C. Code § 11-723 (2012 Repl.), the United States Court of Appeals for the District of Columbia Circuit certified the following question of law to this court:

> When a District of Columbia employee dies while still employed, must the Mayor comply with a posthumously-issued *nunc pro tunc* court order that on its face relates back to a date before the employee's death and retroactively amends a divorce settlement agreement to provide the employee's former spouse with entitlement to benefits in a way that is inconsistent with the last benefits election executed by the employee prior to his death? *See* D.C. Code §§ 1-529.02(c), 1-529.03(b), (c).

We answer that the Mayor need not comply with such an order, reserving an issue that is not presented by the facts of this case.

## I.  Legal Framework

### A.  The Retirement Plan

The District of Columbia Retirement Board (DCRB) is responsible for managing the retirement assets of the District of Columbia's judges, teachers,

firefighters, and police officers. D.C. Code §§ 1-711 to 1-716 (2006 Repl. & 2009 Supp.). In administering the District of Columbia Police Officers' and Firefighters' Retirement Plan, the DCRB must "determine the amount of any payments for annuities or other retirement or disability benefits." D.C. Code § 1-903.04 (a) (2006 Repl.). As part of this determination, "the Board may make reasonable interpretations of and implement all governing authorities." D.C. Code § 1-711 (e) (2009 Supp.). "Although our review of legal issues (such as interpretation of statutes and regulations) is *de novo*, we defer to the agency's interpretation of the statute and regulations it is charged by the legislature to administer, unless its interpretation is unreasonable or is inconsistent with the statutory language or purpose." *District of Columbia Office of Human Rights v. District of Columbia Dep't of Corr.*, 40 A.3d 917, 923 (D.C. 2012). "That deference is based on the agency's presumed expertise in construing the statute it administers." *Id.* (internal quotation marks omitted).

The United States Treasury Department's Office of D.C. Pensions (ODCP) is responsible for benefits accrued for service rendered by District of Columbia firefighters and police officers prior to June 30, 1997. *See* D.C. Code §§ 1-801.02 (10), 1-803.01 (a), and 1-803.02 (2006 Repl.). Thus, when an employee's service occurred before and after June 30, 1997, his benefits are partly the

responsibility of a federal agency (ODCP) and partly the responsibility of a district agency (DCRB). *See* D.C. Code § 1-803.02 (d) (2006 Repl.). Although the initial benefit determinations are made by the DCRB, each agency conducts an independent review based on its own statutes and regulations before issuing separate rulings on appeal. *See* D.C. Code §§ 1-805.01 to .02 (2006 Repl.); 31 C.F.R. §§ 29.404-05 (2009). These agencies coordinated their decisions in this matter, but the certified question only asks us to interpret District of Columbia law.

When a member of the District of Columbia Police Officers' and Firefighters' Retirement Plan dies before retirement, each of his survivors is entitled to an annuity that "shall begin on the day after the date on which the member or former member dies[.]" D.C. Code § 5-716 (e)(1), (2) (2009 Supp.). "The term 'survivor' means a person who is entitled to [an] annuity . . . based on the service of a deceased member[,]" and is limited to a plan member's surviving children,[2] widow, or widower. D.C. Code §§ 5-701 (8), 5-716 (b)-(c) (2009 Supp.). If a member "dies prior to retirement leaving no survivor entitled to receive an annuity[,] . . . all deductions for retirement made from the salary of such

---

[2] Children qualify as survivors while living, unmarried, and under the age of eighteen (or twenty-two if a full-time student or any age if incapable of self-support due to a disability incurred before reaching the age of eighteen). D.C. Code § 5-716 (e)(2)-(3) (2009 Supp.).

deceased member" shall be paid "[t]o the beneficiary or beneficiaries designated in writing by such member[.]"  D.C. Code § 5-706 (c) (2008 Supp.).  As the law indicates, a designated beneficiary may only receive this lump sum payment of retirement contributions when a plan member dies without leaving survivors eligible to receive a survivor annuity.

## B.  The Spouse Equity Amendment Act

Noting that "[c]ourt orders purporting to award a survivor annuity to a former spouse are currently unenforceable[,]" the Council of the District of Columbia adopted the Spouse Equity Amendment Act of 1988 in order "to conform the District's remaining retirement systems *as much as possible* with the changes made in" the federal Civil Service Retirement System that, "among other things, . . .  permit[] a court to award survivor annuities to former spouses[.]" D.C. Council, Report on Bill 7-389, *District of Columbia Spouse Equity Amendment Act of 1988*, at 1 (October 27, 1988) (emphasis in original).  Under this law, however, a former spouse is not entitled to a survivor annuity unless a "qualifying court order" (sometimes referred to as a "QDRO") "by its terms awards to a former spouse . . . a survivor annuity."  D.C. Code § 1-529.02 (c) (2001).

Modeled after a federal statute enacted in 1978, the Spouse Equity Amendment Act of 1988 requires the Mayor to "comply with any qualifying court order that is issued prior to the employee's retirement." D.C. Code § 1-529.03 (b) (2001). The Mayor is also required to "comply with any qualifying court order that is issued after the employee's retirement only to the extent it is consistent with any election previously executed at the time of retirement by the employee regarding that former spouse." D.C. Code § 1-529.03 (c) (2001). Neither the original federal statute nor the Spouse Equity Amendment Act of 1988 explicitly addressed whether court orders issued after the death of an employee who has not yet retired are enforceable.

Noting this lack of clarity, Congress amended federal pension law in 1986. A summary of the amendment identified the statutory "inconsistency" under which "a court order could be changed following the death of an employee who has not yet retired[,]" but could not be "amended after the employee's retirement[.]" 131 Cong. Rec. S18098 (daily ed. Dec. 19, 1985) (section-by-section summary of Senate committee amendment to H.R. 3384). For this reason, Congress amended the statute in order to "bar[] changes in court orders after an employee's death as well as after retirement." *Id*.; *see* 5 U.S.C. § 8341 (h)(4) (2009) (the election "shall

not be effective . . . if such modification is made after the retirement *or death* of the employee") (emphasis added).  Likewise, "[a] court order awarding a former spouse [a] survivor annuity" may not be processed under federal regulations "if it is issued after the date of retirement or death of the employee and modifies or replaces the first order dividing the marital property of the employee or retiree and the former spouse."  5 C.F.R. § 838.806 (a) (2009).  No similar statutes or regulations focusing on the death of the employee have been adopted by the Mayor or Council of the District of Columbia.


## II.  Factual and Procedural Background


Although we have been asked to answer a question of law, it will be helpful to place that issue in its factual context.  Luis Rivera was an active Metropolitan Police Department officer and a member of the District of Columbia Police Officers' and Firefighters' Retirement Plan when he died on December 1, 2009.  He had been married to Cheryl Rivera from October 10, 1992, until February 27, 2009, when the Circuit Court of Brevard County, Florida, issued a final judgment dissolving their marriage.  That judgment also ratified and incorporated a Property/Asset Settlement Agreement.  Neither the judgment nor the agreement mentioned a survivor annuity for Ms. Rivera in the event of Mr. Rivera's death.

Instead, the settlement agreement states that "the wife is entitled to and shall receive her half marital portion of the husband's Washington D.C.'s Police Department Pension[,]" and provides a formula for calculating the amount of that portion. This provision of the agreement refers to a payment wholly distinct from a survivor annuity. *See* D.C. Code § 1-529.02 (c) (2001).

At the time of his death, Luis Rivera was unmarried and had two children: a daughter by Ms. Rivera and a son by Lourdes Lopez. Each child was entitled to a survivor annuity. Ms. Rivera also sought a survivor annuity as a former spouse, but the DCRB denied this claim because none of the supporting documents Ms. Rivera provided "constitute[d] a QDRO (either separately or together) as required under the District of Columbia Spouse Equity Act of 1988 (*see* D.C. Code §§ 1-529.01 *et seq*.)." Without an approved QDRO, the DCRB explained, it "must look to the language of the Settlement Agreement to determine whether there is clear intent as to the survivor benefit, and to the provisions of the Plan related to who is eligible for survivor benefits when a participant dies before retiring."[3] Based on this analysis, it determined that Ms. Rivera was not entitled to a survivor annuity.

---

[3] Although the statute refers to a "survivor annuity," the DCRB commonly uses the term "survivor benefit" to describe the same thing.

On July 2, 2010, Ms. Rivera, through her attorney, requested that the DCRB stipulate to the entry of a *nunc pro tunc* QDRO, with the explanation that "[t]he parties *intended* for Ms. Rivera to receive survivor benefits from the plan." (Emphasis in original.)  She contended that this intent is "confirmed by the fact that [Mr. Rivera] designated Cheryl Rivera as the beneficiary under the plan and he declined to change the beneficiary designation after his divorce."  Here, Ms. Rivera was referring to a form in which Mr. Rivera designated her to receive the "refund" of contributions that would be made if he died without leaving a survivor entitled to receive a survivor annuity.

The DCRB "reviewed the request and [was] unable to accept the QDRO as it is written."  Although the DCRB "recognize[d] that a QDRO may be issued after the death of a plan participant, [Ms. Rivera's] proposed QDRO includes a spousal survivor benefit that was not included in the parties' Property/Asset Settlement Agreement."[4]  Furthermore, the DCRB was not convinced that the beneficiary designation form "clearly confirms the parties' intention for Ms. Rivera to receive

---

[4] The DCRB did not explain the circumstances in which a QDRO could be issued after an employee's death.  It did, however, make clear that this particular posthumous order could not be enforced.

spousal survivor benefits under the Plan. In fact, the Plan's Designation of Beneficiary form clearly states that . . . the beneficiary designation does not affect the rights of any survivors who may qualify for annuity benefits." This designation has no effect on survivor benefits because a designated beneficiary only receives a lump sum payment of retirement contributions when the plan member "dies prior to retirement leaving no survivor entitled to receive" a survivor annuity. *See* D.C. Code § 5-706 (c) (2008 Supp.). The DCRB later noted that, if anything, the designation of Ms. Rivera as the beneficiary of a lump sum payment of retirement contributions demonstrated Mr. Rivera's intent that she *not* receive a survivor annuity ("If he intended that you would receive a survivor annuity, there would be no need to also provide that you would receive these retirement contributions, because you could not get both.").

After receiving the DCRB's response, Ms. Rivera moved for the entry of her proposed QDRO, *nunc pro tunc*, in the Circuit Court of Brevard County, Florida, arguing that "[t]he parties intended for CHERYL RIVERA to receive survivor benefits under the Plan when they entered into their marital settlement agreement on March 6, 2008." In support of this contention, Ms. Rivera submitted the same beneficiary designation form she had previously sent to the DCRB. She also attached her own affidavit and the affidavit of her former husband's attorney, both

indicating that the parties intended to include a QDRO that provided survivor benefits for Ms. Rivera in the original Property/Asset Settlement Agreement. On August 12, 2010, the Brevard County Circuit Court issued Ms. Rivera's proposed QDRO, *nunc pro tunc* to February 27, 2009.

When Ms. Rivera submitted a copy of the *nunc pro tunc* domestic relations order (DRO), the DCRB informed her that it and the ODCP would each separately "consider the . . . submission as an appeal of DCRB's . . . denial of your request for a spousal survivor benefit pursuant to a DRO." It also explained that "[i]f the agencies determine that you are entitled to a spousal survivor benefit, the terms of the Plan require that the benefits currently being paid to the two children be significantly reduced." The DCRB subsequently denied Ms. Rivera's appeal, noting that "[a]bsent a qualifying court order entered into prior to an active Plan participant's death, survivor rights under the Plan are fixed at the time of the participant's death by operation of law." "At the time of Mr. Rivera's death," the DCRB added, "a qualifying DRO had not been submitted" and "[n]either the Plan nor the Spouse Equity Act expressly define[s] a posthumous nunc pro tunc DRO as a qualifying court order requiring compliance." Thus, the DCRB again ruled that Ms. Rivera did "not qualify as a former spouse for purposes of a survivor benefit and DCRB cannot grant your request."

Ms. Rivera sought judicial review in the United States District Court for the District of Columbia by filing a civil action as authorized by the retirement statute. *See* D.C. Code §§ 1-747 (a)(1)(B), 1-815.01 (a)(1), 1-815.02 (a) (2006 Repl.). After that court granted the DCRB's motion for summary judgment, Ms. Rivera appealed the ruling to the United States Court of Appeals for the District of Columbia Circuit, which in due course presented us with the certified question of law quoted above.

## III. Analysis

In cases such as this one, we defer to the agency's interpretation of the statute it administers, unless its interpretation is unreasonable or is inconsistent with the statutory language or purpose. Nothing in the language or legislative history of the Spouse Equity Amendment Act of 1988 indicates that a court order like Ms. Rivera's must be enforced.

Ms. Rivera points to the statutory language which requires the Mayor to "comply with any qualifying court order that is issued prior to the employee's retirement." D.C. Code § 1-529.03 (b) (2001). She argues that the posthumous

*nunc pro tunc* order issued on August 12, 2010, qualifies under this provision because Mr. Rivera had not in fact retired prior to that date. However, Mr. Rivera's death precluded retirement, and it was eminently reasonable for the DCRB to conclude that the posthumous order had not been "issued prior to the employee's retirement."

The law also provides that the Mayor is permitted to comply with a qualifying court order "issued after the employee's retirement only to the extent it is consistent with any election previously executed at the time of retirement by the employee regarding that former spouse." D.C. Code § 1-529.03 (c) (2001). Although the statute does not explicitly address how this provision applies when the employee dies before retiring, we think it is sensibly construed like federal law. Death, like retirement, establishes the demarcation line.

Under federal law, posthumous orders purporting to amend a settlement agreement were expressly rendered unenforceable by a 1986 amendment of the U.S. Code and by subsequently promulgated federal regulations. These changes were not incorporated into the District of Columbia's Spouse Equity Amendment Act of 1988, however, and Ms. Rivera has argued that this was a conscious choice by the Mayor and Council designed to permit such orders to be enforced. But we

have often noted "the hazard of attempting to impute meaning to legislative inaction unless it is absolutely clear the Council can be said to have known about an issue, cared about it, and somehow dealt with it." *Sch. St. Assocs. Ltd. P'ship v. District of Columbia*, 764 A.2d 798, 812-13 (D.C. 2001). Moreover, we have seen no evidence that the Council was aware of the federal clarifying amendments, and we therefore cannot conclude that its failure to incorporate them demonstrates that it intended a different result. In fact, one of the stated purposes of the District of Columbia's statute was to conform to federal law, and we see no basis for inferring from the Council's silence that it intended in this respect to diverge from that law.

The DCRB deemed the survivor annuities payable under the retirement plan to be "fixed" at the time of Mr. Rivera's death. Because the plan allows members to provide a survivor annuity for former spouses, the DCRB looked for a QDRO issued prior to Mr. Rivera's death that "by its terms" entitled his former spouse to an annuity, and it examined the settlement agreement for "clear intent as to the survivor benefit." There was no such QDRO and the settlement agreement did not mention a survivor annuity.

Although Ms. Rivera attempted to generate a QDRO after Mr. Rivera's death, these efforts were in vain. As the DCRB explained, "[n]either the Plan nor

the Spouse Equity Act expressly define[s] a posthumous nunc pro tunc DRO as a qualifying court order requiring compliance." In fact, "[b]ased on the Spouse Equity Act's plain statutory language," Ms. Rivera's court order "is not a qualifying court order." This was a "reasonable interpretation" of "governing authorities." D.C. Code § 1-711 (e) (2009 Supp.).

A contrary interpretation would indulge the fiction that a deceased employee remains capable of retiring, allowing posthumous court orders to significantly amend survivor annuities long after they should have been fixed. It would also allow inconsistent determinations affecting plan beneficiaries, such as Mr. Rivera's children, whose benefits are jointly administered by the DCRB and the ODCP.[5]

It is not our role to decide this case, but only to determine whether the Mayor must comply with a posthumously issued court order of the type described

---

[5] In this case, 44.9123% of Mr. Rivera's service time occurred before June 30, 1997, so the ODCP is responsible for that percentage of each survivor annuity. However, federal law and regulations prohibit the ODCP from recognizing the Florida court's posthumous order as a QDRO. Thus, an interpretation requiring the DCRB to recognize that same order would cause a direct conflict between the agencies that administer each portion of the survivor annuity Ms. Rivera seeks.

in the certified question of law. For the reasons described above, we answer that he or she need not comply with such an order.[6]

In accordance with D.C. Code § 11-723 (g) (2012 Repl.), the Clerk is directed to transmit a copy of this opinion to the United States Court of Appeals for the District of Columbia Circuit and to each of the parties.

*It is so ordered.*

---

[6] We reserve one question that is not presented by the facts of this case. A genuine *nunc pro tunc* entry "'make[s] the record speak the truth by recording or correctly evidencing an act done or judgment rendered by the court at a former time and not carried into the record[.]'" *Appeal of A.H.*, 590 A.2d 123, 131 (D.C. 1991). However, "'[i]t is not the function of an order *nunc pro tunc* to alter the judgment actually rendered. Its purpose is to merely correct the record of the judgment.'" *Id.* In other words, "'[n]othing can be entered *nunc* unless it actually happened *tunc*.'" *Id.* (quoting *Council of Sch. Officers v. Vaughn*, 553 A.2d 1222, 1231 (D.C. 1989) (Schwelb, J., concurring in part and dissenting in part)). We express no views on whether the Mayor would be required to comply with a posthumously issued order that truly qualified as a *nunc pro tunc* entry that should have been made before the plan member's death.