Timothy SPARROW, Appellant,

v.

DISTRICT OF COLUMBIA OFFICE OF HUMAN RIGHTS,

and

R.B. Properties, Inc., Appellees.

No. 12–CV–1732.

District of Columbia Court of Appeals.

Submitted June 6, 2013.

Decided Aug. 29, 2013.

Court, where it was affirmed in a written order. We now consider Mr. Sparrow's appeal of the trial court's decision to uphold OHR's probable cause finding, in which Mr. Sparrow contends that: (1) OHR erroneously concluded that R.B. Properties engaged in an interactive process with him to identify a reasonable accommodation; (2) there was not substantial evidence to support OHR's finding that R.B. Properties' offer to demote Mr. Sparrow and reduce his salary and weekly hours was a reasonable accommodation; and (3) OHR placed an overly onerous burden on Mr. Sparrow to rebut R.B. Properties' allegation that Mr. Sparrow was terminated for poor performance. We remand to OHR for further proceedings not inconsistent with this opinion.

Denise M. Clark, Washington, DC, was on the brief, for appellant.

Jonathan W. Greenbaum was on the brief for appellee, R.B. Properties, Inc.

Before BLACKBURNE–RIGSBY and McLEESE, Associate Judges, and NEBEKER, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

After conducting a preliminary investigation, the District of Columbia Office of Human Rights (OHR) found that there was no probable cause to support appellant Timothy Sparrow's allegations that appellee R.B. Properties: (1) failed to provide him with a reasonable accommodation for his disability; and (2) terminated him in retaliation for requesting a reasonable accommodation. Upon reconsideration at Sparrow's request, OHR affirmed its initial determination that there was no probable cause. Mr. Sparrow appealed OHR's decision to the District of Columbia Superior

**I.**

Mr. Sparrow's OHR complaint challenged his demotion and subsequent dismissal from his employment at the Sea Catch Restaurant in Washington, D.C. His complaint alleged the following sequence of events. While working as the "Director of Restaurant/Catering" at the restaurant, Mr. Sparrow was diagnosed with "an extreme case of degenerative joint disease in his left hip" on February 26, 2009. The next day, Mr. Sparrow informed R.B. Properties of his condition, which required him to use a cane until he was able to get a hip replacement. Pursuant to his doctor's recommendation, he requested to reduce his usual 65–hour work week by 10–15 hours and to spend less time on his feet while at work. Mr. Sparrow claimed that after his limp became noticeable, Tom Whitney, the Director of Quality Assurance, expressed concern about how the limp appeared to the restaurant patrons and told Mr. Sparrow that he wanted the condition "addressed as soon as possible." Mr. Sparrow further claimed that when

Mr. Whitney called Mr. Sparrow to a meeting and Mr. Sparrow requested to move the meeting to his office rather than Mr. Whitney's upstairs office, to accommodate Mr. Sparrow's difficulty with the stairs, Mr. Whitney told Mr. Sparrow to "hobble up the stairs." Then, during a March 9, 2009, meeting, Mr. Sparrow was told that his position was being eliminated and that he had "the day to consider the offer" for a part-time position with a $13,000 salary reduction and fewer responsibilities. There is no indication that Mr. Sparrow's request for an accommodation was discussed at this meeting. Mr. Sparrow accepted the demotion, his pay was cut, his hours were reduced to twenty hours per week, he was removed "from working the floor," and he was told to "concentrate on booking catering events." Then, on March 17, 2009, R.B. Properties terminated Mr. Sparrow for "poor performance." Mr. Sparrow filed his complaint with OHR on March 5, 2010.

During OHR's initial investigation to determine whether there was probable cause to support Mr. Sparrow's allegations of disability-based discrimination, Mr. Sparrow submitted affidavits from his colleagues at Sea Catch Restaurant and copies of emails that he sent to R.B. Properties' management.[1] These documents supported his claims that R.B. Properties discriminated against Mr.

Sparrow by failing to accommodate his disability and terminated his employment in retaliation of his request for a reasonable accommodation. Each witness expressed surprise and dismay at how R.B. Properties treated Mr. Sparrow. They discussed, *inter alia*, Mr. Sparrow's strong work ethic, his effectiveness as a bar supervisor, his heavy workload, the frequent praise he publicly received from members of R.B. Properties' upper management, and the affiants' perceptions that he was fired in response to his request for a reasonable accommodation.[2]

R.B. Properties responded to Mr. Sparrow's claims of discrimination by claiming that it had accommodated Mr. Sparrow's disabling condition by reducing his hours and reducing his responsibilities. R.B. Properties further argued that Mr. Sparrow was terminated because of his poor performance—not his disability. To support these claims, R.B. Properties produced affidavits from Mr. Whitney; Lisa Hornstein, Vice President of Sales and Marketing; and James Martens, Executive Vice President/CFO. These affidavits, which were identical apart from the affiants' names and titles, provided examples of Mr. Sparrow's poor performance over the course of the eight months that Mr. Sparrow worked at the Sea Catch Restaurant.[3] Furthermore, the affiants asserted

1. Specifically, Mr. Sparrow offered statements from: Philip Li, a Sea Catch Restaurant bartender; Mariana Guevara, a former Sea Catch Restaurant co-worker; David Hou, a former co-worker at Sea Catch Restaurant and friend of Mr. Sparrow; and Michael Daddona, former general manager of another R.B. Properties' facility, the State Plaza Hotel, where Mr. Sparrow worked before transferring to the Sea Catch Restaurant.

2. Mr. Sparrow also submitted an August 1, 2008, email that he sent to the CEO detailing several problems that needed to be addressed at the Sea Catch Restaurant, which R.B.

Properties' witnesses claimed that Mr. Sparrow had never brought to the attention of executive management. Mr. Sparrow's email identified various problems, including "[m]ice issues," smoke "coming into the banquet room," leaks in the kitchen and raw bar, no smoke detectors in the restaurant, security system not working, elevator breaking down consistently, and a "large hole in the office ceiling."

3. The witnesses alleged the following examples of Mr. Sparrow's poor performance: Mr. Sparrow "did not report an alleged physical altercation between restaurant employees,"

that although Mr. Sparrow "did not claim to have a disability," his "request for a reduced schedule was granted. His hours were reduced as requested and he was to concentrate on booking banquets while he was working. At no time did [Mr. Sparrow] request for a change in the accommodations made[,] nor did he suggest other accommodations be made." The affiants averred that Mr. Sparrow "was terminated for [p]oor performance." R.B. Properties also submitted a negative customer evaluation; emails from Mr. Whitney to Mr. Sparrow and Mr. Sgro; and a document dated June 12, 2010, entitled "Recap of Sea Catch Catering Issues," which outlined several examples of Mr. Sparrow's poor performance.[4] In these emails, Mr. Whitney detailed service problems at the restaurant. Finally, R.B. Properties provided financial data from the fourth quarter of 2008 and the first quarter of 2009 indicating that "Net Operating Income was down 38 percent from the previous year," and that catering sales in particular were down significantly.

Based on the evidence it received during its preliminary investigation—and without conducting a hearing—OHR determined that there was no probable cause to support Mr. Sparrow's allegations that R.B. Properties failed to provide a reasonable accommodation and terminated his employment in retaliation for his reasonable accommodation request. Mr. Sparrow filed a "Request for Reconsideration" to

OHR in which he alleged that OHR's "no probable cause" findings misstated a material fact by finding that Mr. Sparrow's demotion amounted to a reasonable accommodation. Mr. Sparrow further alleged that OHR misapplied the law by: (1) not considering whether R.B. Properties engaged in an interactive process with Mr. Sparrow to provide a reasonable accommodation; (2) not finding that R.B. Properties "acted in bad faith when it failed to engage in an interactive process"; and (3) imposing an overly onerous evidentiary burden on Mr. Sparrow to rebut the legitimate reason proffered by R.B. Properties to support its decision to terminate Mr. Sparrow.

Without conducting a hearing, OHR addressed Mr. Sparrow's request for reconsideration in a written "Determination on Complainant's Request for Reconsideration." OHR explained that Mr. Sparrow had not refuted the evidence presented by R.B. Properties, which showed that it accommodated Mr. Sparrow by reducing his hours and responsibilities, and that Mr. Sparrow failed to refute the legitimate reason that R.B. Properties offered for Mr. Sparrow's termination. Accordingly, OHR affirmed its initial determination.

Mr. Sparrow appealed OHR's decision to the D.C. Superior Court. Judge Todd E. Edelman issued a written opinion affirming OHR's findings. Mr. Sparrow filed a timely appeal of the trial court's

---

bar costs were high because Mr. Sparrow delegated responsibility of ordering liquor to the bartender, Mr. Sparrow did not draw attention to the faulty alarm system that was not operational for five months, employees claimed that Mr. Sparrow and Mr. Sgro "partied in the restaurant after closing hours," the restaurant was in a poor financial situation, and catering revenues were down since he took charge of catering.

4. Specifically, it indicated that either Mr. Sparrow or Mr. Sgro failed to: consistently call concierges every day, develop a "concierge blitz program," develop a "local merchant program," "contact all competitive restaurant Catering Managers ... for overflow business," contact past clients for upcoming business, and call hotels without restaurants for inauguration business. Moreover, Mr. Sparrow was specifically referenced for his failure "to look into joining the private dining group."

judgment, challenging OHR's conclusions that (1) R.B. Properties engaged in an interactive process to identify a reasonable accommodation; (2) R.B. Properties' offer to demote Mr. Sparrow and reduce his salary and weekly hours was a reasonable accommodation; and (3) Mr. Sparrow had failed to rebut R.B. Properties' allegation that he was terminated for poor performance, rather than his request for a reasonable accommodation.

## II.

 "We review a Superior Court ruling on an agency decision in the same fashion in which we would review an agency decision if it were appealable directly to us." [5] *District of Columbia Office of Human Rights v. District of Columbia Dep't of Corr.*, 40 A.3d 917, 923 (D.C.2012) (citations, internal quotation marks, and brackets omitted). We "must affirm [OHR's] action if it is supported by substantial evidence and otherwise in accordance with law." *Vogel v. District of Columbia Office of Planning*, 944 A.2d 456, 462 n. 10 (D.C. 2008) (citation omitted) (articulating the standard of review used to evaluate OHR's decision that there was no probable cause for an age discrimination claim). Substantial evidence is "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs.*, 827 A.2d 35, 39 (D.C.2003) (citation and internal quotation marks omitted). If, however, an agency decision "ignores material evidence in the record," the agency "fails to base its decision on substantial evidence in the record." *Darden v. District of Columbia Dep't of Emp't Servs.*, 911 A.2d 410, 416 (D.C.2006) (citation omitted). Thus, if OHR "ignore[d] material evidence in the record" in making its finding that Mr. Sparrow failed to establish probable cause to support his claims, we will conclude that OHR's decision was not supported by substantial evidence. *See id.* at 417 (remanding for further proceedings because "the Board ignored substantial evidence on the record" when it failed to consider statements that were material to determining an appropriate amount of compensation for petitioner (citations and internal quotation marks omitted)).

 At the outset, we emphasize that the role of OHR's preliminary investigation is limited. In an employment discrimination case brought under the District of Columbia Human Rights Act, OHR conducts an initial investigation to determine whether there is probable cause to credit the complainant's allegations.[6] 4 DCMR § 715.1 (2013). "A finding of probable cause shall be based upon credible, probative, and substantial evidence which demonstrates a nexus between the harm complained of and the protected characteristic or activity of the complainant." 4 DCMR § 716.1 (2013); *cf. Ammerman v. Newman*, 384 A.2d 637, 639–40 (D.C.1978) ("Probable cause does not mean sufficient cause. According to the generally accept-

---

5. We require the Superior Court to review the agency decision first because "a finding by OHR of no probable cause [is] not an agency decision in a contested case in which a trial-type hearing is required, and ... such a finding is therefore not reviewable in this court.... [T]he petitioner's only recourse is a civil action in the Superior Court...." *Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392, 397 (D.C.1991)

(citation and internal quotation marks omitted).

6. If OHR does find probable cause to support complainant's allegations, OHR recommends conciliation. 4 DCMR § 717.1 (2013). If those efforts fail, the matter is considered "at a public hearing before one or more members of the Commission or before an Administrative Law Judge." 4 DCMR § 718.2 (2013).

ed view, probable cause depends not on the actual state of the case in point of fact, but upon [facts and circumstances that warrant an] honest belief. . . . It may flow from a belief that turns out to be unfounded as long as it is not unreasonable." (citations omitted)). A determination that no probable cause exists to support a complainant's allegations, which, as in the present case, is made without conducting a hearing, can be appealed for reconsideration by OHR on three bases: (1) there is new evidence; (2) there was a misapplication of the law; or (3) a misstatement of material fact. *Id.* at 1479 (citation omitted).

To determine whether OHR properly concluded that there was no probable cause to support Mr. Sparrow's allegations of disability-based discrimination, we address his challenges to three aspects of OHR's findings. First, we consider whether substantial evidence supported OHR's finding that R.B. Properties did engage Mr. Sparrow in interactive dialogue to identify a reasonable accommodation. We then consider Mr. Sparrow's claim that OHR failed to consider "credible, probative and substantial evidence that R.B. Properties failed to provide Mr. Sparrow with an accommodation. . . ." Finally, we consider whether substantial evidence supported OHR's finding that Mr. Sparrow failed to show that R.B. Properties' proffered reasons for terminating him were mere pretext. To resolve these issues, we note that we "effectively incorporate judicial construction of related antidiscrimination provisions of the Americans with Disability Act (ADA). . . ." *Hunt v. District of Columbia,* 66 A.3d 987, 990 (D.C.2013) (citations omitted).

### A.

 The interactive process serves "to identify potential accommodations that could overcome the employee's limitations." *Id.* at 992 (citation omitted). After an employee requests an accommodation, the employer engages in the interactive process by communicating with the employee to determine the appropriate reasonable accommodation. *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 312–13 (3rd Cir.1999) (citation and internal quotation marks omitted). Employers participate in an interactive process by "meeting with the employee who requests accommodation, requesting information about the condition and what limitations the employee has, asking the employee what he or she specifically wants, showing some sign of having considered the employee's request, and offering and discussing available alternatives when the employee's request is too burdensome."[7] *Fjellestad v.*

---

7. In *Hunt v. District of Columbia,* 66 A.3d 987, 989 (D.C.2013), Ms. Hunt developed post-traumatic stress disorder after an inmate attacked her while she was on duty as a corrections officer. Pursuant to her psychiatrist's recommendation, she requested that the Department of Corrections (DOC) modify her position to limit her contact with inmates. *Id.* In response, DOC assigned her to a staff entrance and excused her from roll call. *Id.* After experiencing three panic attacks during the trial period, a DOC official "again talked to Hunt about possible positions at the jail involving limited contact with inmates," such as in the motor pool or records office. *Id.* A DOC official did, however, aver that there are no positions for correctional officers that do not involve at least some minimal contact or interaction with inmates. *Id.* We approvingly observed that DOC had engaged Ms. Hunt in an interactive dialogue "to restructure her job at the jail to limit inmate contact as far as possible." *Id.* at 992. On appeal, Ms. Hunt argued that DOC failed to engage in an interactive process regarding the possibility of reassigning her from her position as a correctional officer to an administrative position that would involve no contact with inmates. *Id.* We declined to consider that argument because Ms. Hunt "offered no evidence that she had ever sought to shift the subject of

*Pizza Hut of Am., Inc.*, 188 F.3d 944, 953 n. 7 (8th Cir.1999) (citation omitted). "Although there is no per se liability under the ADA if an employer fails to engage in an interactive process,"[8] the failure to do so is "prima facie evidence that the employer may be acting in bad faith." *Cravens v. Blue Cross & Blue Shield*, 214 F.3d 1011, 1021 (8th Cir.2000) (citations and internal quotation marks omitted). Accordingly, if an employer has not engaged in an interactive process, "a factual question exists as to whether the employer has attempted to provide reasonable accommodation. . . ." *Id.* (citations and internal quotation marks omitted).

▮▮▮▮ OHR determined that there was no probable cause to find that R.B. Properties did not engage Mr. Sparrow in an interactive process because R.B. Properties' "witnesses maintain[ed] in their affidavits that . . . [R.B. Properties] worked with [Mr. Sparrow] to meet his request" for accommodation and Mr. Sparrow failed "to provide further evidence to support his assertions." However, in making this finding, OHR ignored other evidence undermining R.B. Properties' claim that it engaged in dialogue with Mr. Sparrow before offering to reduce his pay by $13,000 and demote him. Indeed, both Mr. Sparrow's and R.B. Properties' version of events suggest that the parties' only communications related to accommodating Mr. Sparrow's disability were limited to: (1) Mr. Sparrow's initial request for an accommodation; and (2) R.B. Properties' offer of a position that provided reduced pay and fewer responsibilities. Therefore, the record reveals that the only effort R.B. Properties undertook to address Mr. Sparrow's accommodation request was a "take it or leave it" offer of a demotion. That is compelling evidence that R.B. Properties did not engage in an interactive dialogue. *See Taylor, supra,* 184 F.3d at 311 ("[The interactive process] should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." (citation omitted)). Because OHR misconstrued R.B.'s offer as evidence that R.B. Properties engaged Mr. Sparrow in an interactive process and "ignored material evidence in the record" indicating that no meaningful dialogue between Mr. Sparrow and R.B. Properties occurred, its finding that R.B. Properties engaged in the interactive process was not supported by substantial evidence. *Darden, supra,* 911 A.2d at 416.

**B.**

We next consider OHR's finding that R.B. Properties' decision to demote Mr. Sparrow was a reasonable accommodation—as argued by R.B. Properties—rather than an adverse employment action—as argued by Mr. Sparrow. R.B. Properties argues that its decision to demote Mr. Sparrow was a reasonable accommodation

---

accommodation to a possible transfer to a job other than as a correctional officer or at another location in the DOC organization. . . ." *Id.* at 993. Here, Mr. Sparrow informed his employer that due to his disability, he needed to reduce his hours by 10–15 hours per week and spend less time on his feet. That is, he sought to modify his existing role but did not request a reassignment. Thus, in accordance with the DOC's efforts in *Hunt*, engaging in an interactive process required R.B. Properties to discuss with Mr. Sparrow possible modifications to his position that could overcome his disability-related limitations without "imposing an undue hardship on the operation of [R.B. Properties'] program." *Id.* at 991 (citations and internal quotation marks omitted).

8. As with the ADA, Title 4 of the D.C. Municipal Regulations, which governs "Human Rights and Relations," also does not explicitly require employers to engage in an interactive process.

because, pursuant to his request, it reduced the number of hours Mr. Sparrow worked and limited the time that he would spend on his feet.[9] Conversely, Mr. Sparrow argues that "the demotion was not an accommodation, but rather [it was] demonstrative of R.B. Properties' disfavor of Mr. Sparrow's appearance in the restaurant because of the physical effects of his disability—his very apparent limping." Furthermore, Mr. Sparrow asserts that his demotion was not a reasonable accommodation because it was "accompanied with a penalty—a salary cut...." Mr. Sparrow substantiates his characterization of the demotion as an adverse employment action with the evidence that: (1) Mr. Whitney told Mr. Sparrow that he wanted his limp addressed as soon as possible because of how it might appear to restaurant customers; (2) Mr. Whitney told Mr. Sparrow to "hobble up the stairs" in response to Mr. Sparrow's request to hold a meeting in his office to avoid traversing the stairs to Mr. Whitney's office; and (3) affidavits from his colleagues expressing their opinions that Mr. Sparrow experienced an adverse employment action in response to his request for accommodation and that his treatment was unfair.

■■■■■ OHR found that R.B. Properties provided Mr. Sparrow with a reasonable accommodation because, per Mr. Sparrow's request, the demotion served to reduce Mr. Sparrow's hours and limited the time he spent on his feet. Yet, in light of the extent and implications of the reduction of hours, this action was not necessarily a *reasonable* accommodation. *See Jay v. Intermet Wagner, Inc.*, 233 F.3d 1014, 1017 (7th Cir.2000) (citation omitted) (recognizing that while the ADA's definition of reasonable accommodation includes "reassignment to a vacant position," due to the employer's 20–month delay in reassigning employee, the reasonableness of the reassignment was contingent upon its timeliness). R.B. Properties' reduction of Mr. Sparrow's hours, responsibilities, and pay falls within a spectrum that ranges from, on one end, a reasonable accommodation and, on the other end, an adverse employment action. *See Johnson v. United States,* 398 A.2d 354, 361 (D.C.1979) (discussing how a fact-finder "exercising discretion has the ability to choose from a range of permissible conclusions ... [and] can rely largely upon his own judgment in choosing among the alternatives." (citations omitted)). OHR's finding of no probable cause ignored the evidence Mr. Sparrow produced supporting his claim that R.B. Properties "imposed an adverse employment action upon [Mr. Sparrow], and then called it an accommodation...." By doing so, OHR misapplied the probable cause standard, which requires consideration of whether Sparrow's version of events was reasonable, not whether he failed to disprove R.B. Properties' version of events. Therefore, remand is necessary so that OHR can consider all the evidence, and determine whether there is probative, credible, and substantial evidence that a reasonable accommodation was not given.[10]

9. An employer has a "duty under the ADA [and] hence, under the DCHRA to make reasonable accommodation to the known physical or mental limitations of a disabled employee unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its program." *Hunt, supra,* 66 A.3d at 991 (citation, internal quotation marks, brackets, and ellipses omitted). "The ADA further defines the term 'reasonable accommodation' to include 'job restructuring [and] part-time or modified work schedules.'" *Breen v. Dep't of Transp.,* 350 U.S.App.D.C. 212, 214, 282 F.3d 839, 841 (2002) (quoting 42 U.S.C. § 12111(9) (1991) and citing 29 C.F.R. § 1614.203(c)(2) (2002)).

10. OHR should remain cognizant of our earlier conclusion that there was not substantial evidence establishing that R.B. Properties en-

## C.

Finally, we consider OHR's finding that Mr. Sparrow failed to show that the legitimate reason that R.B. Properties cited for terminating Mr. Sparrow was mere pretext. Under the burden-shifting scheme that we apply to evaluate retaliation claims, the employee must proffer credible, probative, and substantial evidence that "the employer's legitimate, non-discriminatory reason [for the termination] was not the actual reason [for termination] and that the employer intentionally discriminated against [the employee]...." *Brady v. Office of the Sergeant at Arms,* 380 U.S.App.D.C. 283, 290, 520 F.3d 490, 497 (2008).

■■■ Here, R.B. Properties informed OHR that Mr. Sparrow's "poor performance" was the reason for his termination. OHR found that "in detailing the reasons for his failure to consistently improve catering sales or bookings, [Mr. Sparrow] qualifies his performance," but ultimately "does not succeed in proving that [R.B. Properties'] other reasons for demoting him and subsequently terminating his employment amount to pretext...." In making this finding, OHR improperly placed an overly onerous burden on Mr. Sparrow to prove that any evidence suggesting poor performance was false. Instead, during the investigative phase, Mr. Sparrow's burden was to provide credible, substantial, and probative evidence that "the legitimate, non-discriminatory reason was not the actual reason [for termination] and that [R.B. Properties] intentionally discriminated against [him]...." *Brady, supra,* 380 U.S.App.D.C. at 290, 520 F.3d at 497. By qualifying his performance with

gaged Mr. Sparrow in an interactive process. *See supra* Part II.A. The failure to engage in an interactive process is "prima facie evidence that the employer may be acting in bad faith," which supports Mr. Sparrow's argu-

the affidavits from his colleagues stating that management believed Mr. Sparrow was a good employee and the email Mr. Sparrow sent to management detailing several problems in the restaurant that R.B. Properties claimed he had failed to bring to management's attention, Mr. Sparrow offered evidence that R.B. Properties did not truly believe that Mr. Sparrow's performance was poor and that its stated reasons were pretext for its decision to terminate him. Remand is therefore necessary so that OHR can evaluate whether there was probative, credible, and substantial evidence that R.B. Properties did not terminate Mr. Sparrow because of his poor performance, but rather discriminated against him based on his disability.

Accordingly, we REMAND this case to the trial court with instructions to remand to OHR for further proceedings not inconsistent with this opinion.

*So ordered.*

ment that his demotion was not a reasonable accommodation. *Cravens, supra,* 214 F.3d at 1021 (citation and internal quotation marks omitted).