*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 19-CV-0669

TAMU TURNER, APPELLANT,

V.

DISTRICT OF COLUMBIA OFFICE OF HUMAN RIGHTS and
DISTRICT OF COLUMBIA PUBLIC SCHOOLS, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAP-1294-18)

(Hon. Michael L. Rankin, Trial Judge)

(Submitted September 15, 2020                Decided January 7, 2021)

*S. Micah Salb* was on the brief for appellant.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKahn*, Solicitor General, *Carl J. Schifferle*, Acting Deputy Solicitor General, and *James C. McKay, Jr.*, Senior Assistant Attorney General, were on the brief for appellees.

Before EASTERLY, MCLEESE, and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: Tamu Turner, a former mathematics teacher employed by District of Columbia Public Schools ("DCPS"), filed a complaint alleging she was not provided a reasonable accommodation for a disability she

sustained after a student attacked her. Following an investigation and without conducting a hearing, the District of Columbia Office of Human Rights ("OHR") found there was no probable cause to support Ms. Turner's allegations that DCPS failed to reasonably accommodate her disability. Ms. Turner sought review of that determination in D.C. Superior Court, which upheld OHR's decision.

Ms. Turner now appeals the Superior Court's judgment, asserting that substantial evidence did not support OHR's finding of no probable cause. We agree and reverse the decision of the Superior Court and remand the case to OHR for further proceedings consistent with this opinion.

**I.**

In October of 2015, a student assaulted Ms. Turner during a break between classes. Following the assault, Ms. Turner began experiencing panic attacks and was eventually diagnosed with Post-Traumatic Stress Disorder. Approximately one month after the assault, Ms. Turner went on leave because her PTSD made it too difficult for her to work in a classroom environment.

Around November 12, 2015, Ms. Turner began coordinating with DCPS to determine an appropriate workplace accommodation that would allow her to return

to work, whenever she was able to do so. She first requested to teach remotely from home via Skype, or to work remotely as a Science, Technology, Engineering, and Mathematics coordinator. DCPS rejected these suggestions because there were no teaching positions available that could be performed remotely, and there was no such coordinator position at Anacostia High School, where she worked. DCPS instead offered to shorten Ms. Turner's work day, decrease the number of students in her classroom, and rearrange her schedule so she would not have to teach alone. Ms. Turner rejected these options as they still required her to be in the classroom, which she believed would continue to trigger her PTSD.

On December 21, 2015, Ms. Turner submitted an application requesting three months of leave—running retroactively from November 25, 2015—under the District of Columbia Family and Medical Leave Act ("FMLA"), D.C. Code § 32-501, *et seq.* (2019 Repl.). Ms. Turner's application was granted and she was placed on unpaid medical leave through February 26, 2016. In tandem with her FMLA leave application, Ms. Turner submitted an application requesting accommodations under the Americans with Disabilities Act ("ADA"). Ms. Turner's ADA application included three noteworthy documents: (1) a letter from Ms. Turner dated November 24, 2015, asking DCPS to reassign her to a central office position and to consider her "for any of the specialists or managerial

positions that support the District of Columbia Schools on the DCPS website"; (2) a letter dated December 4, 2015, from Ms. Turner's physician, Dr. Tanya Alim, stating that Ms. Turner "will need to work from home and eventually be reassigned when her symptoms are manageable which varies from patient to patient, but may take at least six months to resume normal duties and responsibilities"; and (3) a physician's report from December 15, 2015—also authored by Dr. Alim—stating that Ms. Turner's incapacity would last for three months, until February 28, 2016, approximately two days after the date her FMLA leave was expected to conclude.

In early February 2016, Ms. Turner inquired about the status of her ADA application and was told that DCPS was still processing her request. She followed up again two weeks later, asking for a final determination and whether DCPS was considering her request for reassignment. On February 16, 2016, DCPS responded to Ms. Turner's request for accommodation by offering to extend her unpaid leave for an additional four months through the end of the school year, until June 30, 2016. The letter also notified Ms. Turner that DCPS was "unable to reassign [her] to a non-teaching role" at that particular time because reassignment did "not qualify as a reasonable accommodation under the ADA," but that she could forward her resume and DCPS would consider reassigning her at a later time. DCPS did not explain why reassignment was not reasonable under the ADA, but

during OHR's preliminary investigation, it became clear that DCPS understood Ms. Turner's ADA application—and more pointedly, Dr. Alim's December 4, 2015 letter—to indicate that, unless she could work from home, she needed to take leave for at least six months. Two days after receiving DCPS's letter, Ms. Turner responded by forwarding her resume along with a list of vacant positions printed from the DCPS website.

After waiting more than a month for DCPS to respond to her email, Ms. Turner filed an internal complaint with DCPS's Equal Employment Opportunity Office. She then filed an administrative charge with OHR alleging that DCPS discriminated against her on the basis of her disability in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11(a) (2016 Repl.), when it failed to reasonably accommodate her disability by denying her request for reassignment to a central office position and instead extended her unpaid leave through June 30, 2016. Following a preliminary investigation, OHR concluded there was no probable cause to support Ms. Turner's allegations. Ms. Turner petitioned the Superior Court for review, which upheld OHR's decision. Ms. Turner then timely brought this appeal.

**II.**

The central issue on appeal is whether substantial evidence supports OHR's conclusion that no probable cause existed to believe DCPS failed to accommodate Ms. Turner's disability from the end of February 2016, through June 30, 2016. OHR's no probable cause determination was based on documentation which it believed indicated Ms. Turner could not perform the essential duties of any position before June 30, 2016; the first being her medical records and the second being her application for long-term disability in January 2016. DCPS now defends OHR's decision on the same basis. We disagree and conclude substantial evidence did not support OHR's finding of no probable cause.

We review a trial court's affirmance of a no probable cause finding "in the same fashion in which we would review [OHR's] decision if it were appealable directly to [our court]." *Sparrow v. District of Columbia Office of Human Rights,* 74 A.3d 698, 703 (D.C. 2013) (internal quotations marks omitted) (quoting *District of Columbia Office of Human Rights v. District of Columbia Dep't of Corr.*, 40 A.3d 917, 923 (D.C. 2012)). That is, we affirm if OHR's decision "is supported by substantial evidence and otherwise in accordance with law." *Sparrow*, 74 A.3d at

703 (quoting *Vogel v. District of Columbia Office of Planning*, 944 A.2d 456, 462 n.10 (D.C. 2008)).

Once a complaint alleging a violation of the DCHRA is filed, OHR conducts a preliminary investigation to determine whether probable cause supports the complainant's allegations. 4 DCMR §§ 711–16 (2020). A finding of no probable cause divests the complainant of a right to a hearing. *See id.* §§ 716–18 (probable cause finding necessary to trigger the conciliation and public hearing processes). OHR's role at the probable cause stage is limited to determining whether credible, probative, and substantial evidence exists to conclude that the "complainant has 'met the prima facie elements of h[er] claim.'" *Id.* § 716.1; *District of Columbia Dep't of Public Works v. District of Columbia Office of Human Rights*, 195 A.3d 483, 500 (D.C. 2018) (quoting *Smith v. District of Columbia Office of Human Rights*, 77 A.3d 980, 997 (D.C. 2013)). A complainant is not required to disprove the employer's version of events at this stage; she need only present evidence from which discrimination can be reasonably inferred. *See Sparrow*, 74 A.3d at 706. In other words, until a full hearing is granted, a complainant does not have "the burden to prove her claims by a preponderance of the evidence." *See Smith*, 77 A.3d at 997–98.

To make out a prima facie case of disability discrimination under the DCHRA for failure to reasonably accommodate, a complainant "must demonstrate, among other things, that she is an individual with a disability, and that she can perform the essential functions of her position with or without a reasonable accommodation." *Barrett v. Covington & Burling LLP*, 979 A.2d 1239, 1250 (D.C. 2009). "If the [complainant] makes a prima facie showing, the employer must demonstrate that it reasonably accommodated the [complainant's] disability." *Id.* Ms. Turner maintains that she demonstrated she could perform the essential functions of a non-teaching central office position and that DCPS failed to reasonably accommodate her.

**A.**

We first address whether substantial evidence supports OHR's finding that Ms. Turner was not capable of performing the essential functions of a DCPS position at the conclusion of her initial three-month stint of FMLA leave.[1] Ms.

---

[1] While our review of OHR's determination is not affected by the trial court's reasoning, *Dupree v. District of Columbia Dep't of Corr.*, 132 A.3d 150, 154 (D.C. 2016), we note that the trial court fundamentally misunderstood the claim before it by focusing on the wrong time period. It focused on Ms. Turner's FMLA leave from November 2015 through February 2016, but there is no dispute Ms. Turner was incapable of working during that period. The pertinent time period

*(continued…)*

Turner does not contest that she was unable to return to an in-classroom teaching position at that time. Indeed, she communicated to DCPS that returning to the classroom was not an option as it would aggravate her PTSD. While Ms. Turner requested accommodations that would allow her to teach remotely from home, there were no remote teaching positions, and DCPS viewed physical presence in the classroom as an essential function of teaching mathematics. Thus, even with accommodations, there is no dispute that Ms. Turner was not able to perform the essential functions of a DCPS mathematics teacher. *Hunt v. District of Columbia*, 66 A.3d 987, 990 (D.C. 2013) ("In determining the essential functions of a position, courts 'generally give substantial weight to the employer's view of job requirements.'") (quoting *Ward v. Mass. Health Research Inst.*, 209 F.3d 29, 34 (1st Cir. 2000)); *see Strass v. Kaiser Found. Health Plan of Mid-Atlantic*, 744 A.2d 1000, 1006–07 (D.C. 2000) (employer does not have to create a new position to accommodate an employee's disability).

---

*(…continued)*
began *after* February 28, 2016, when DCPS placed Ms. Turner on extended leave through the end of the school year despite her request to be placed in a non-teaching central office position.

That does not end the inquiry, however. This court, like other courts interpreting the ADA,[2] has previously held that a reasonable accommodation may "include reassignment of a disabled employee, on request, to a different job if it is vacant and she is qualified for it." *Hunt*, 66 A.3d at 991–92; *Strass*, 744 A.2d at 1006–08 (reasonable accommodation may include "job restructuring" and "reassignment to a vacant position") (citing *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)).[3] So we must further assess whether Ms. Turner was capable of performing the essential functions of another position at DCPS, for example, a non-teaching central office position. In answering that

---

[2] "Our decisions under the DCHRA regarding whether an employee was discriminated against because of a 'disability' effectively incorporate judicial construction of related anti-discrimination provisions of the Americans with Disability Act (ADA)." *Hunt*, 66 A.3d at 990 (citations omitted).

[3] *See also Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1300–01 (D.C. Cir. 1998) (employee's inability to perform his current job even with accommodation did not render him ineligible for the reasonable accommodation of reassignment to a vacant position); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir. 1996) ("Our review of the ADA, its regulations, and the [Equal Employment Opportunity Commission's] interpretative guidance leads us to the conclusion of the majority of the courts that have addressed the issue that the ADA may require an employer to reassign a disabled employee to a different position as reasonable accommodation where the employee can no longer perform the essential functions of their current position.") (collecting cases); *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 257 (6th Cir. 2000) ("[A]n employer has a duty under the ADA to consider transferring a disabled employee who can no longer perform his old job even with accommodation to a new position within the [c]ompany for which that employee is otherwise qualified.").

question in the negative, OHR interpreted the record as conclusively establishing that Ms. Turner needed to remain on leave (or work from home) for at least six months. Ms. Turner, by contrast, posits that with some accommodation, she was ready and able to return to work at the end of February 2016.

We agree with Ms. Turner that probable cause exists to find that she was capable of returning to work in a non-classroom position by the end of February, and there is not substantial evidence to support OHR's contrary conclusion. The evidence shows that Ms. Turner asked to be reassigned to a central office position when she transmitted her application for ADA accommodations in late December 2015. While her reassignment request does not specify an exact date by which Ms. Turner could return to work, included elsewhere in her ADA application is the December 15, 2015, report from Dr. Alim, who opined that Ms. Turner would be totally incapacitated only through February 28, 2016. Additionally, Ms. Turner followed up with DCPS in early February, asking if it had considered her request to reassign her to a central office position when her leave terminated at month's end, providing further support that she was willing and able to return to work if she could be accommodated. DCPS's Equal Employment Opportunity manager who handled Ms. Turner's ADA application even understood Ms. Turner's communications in early February as reflecting a willingness to return to work

immediately after February 28, 2016.[4] Based on this record, we agree with Ms. Turner that probable cause existed to support her claim that she was willing and able to return to work, if accommodated, at the conclusion of her FMLA leave.

In finding otherwise, OHR relied upon Dr. Alim's December 4, 2015 letter and Ms. Turner's application for long-term disability in January 2016. Neither is sufficient to sustain OHR's no probable cause determination. Dr. Alim's December 4 letter stated that Ms. Turner "*may* take *at least* six months to resume normal duties and responsibilities." The italicized words above stand in juxtaposition, making the statement difficult to parse: The word "*may*" indicates the mere possibility of a six-month absence, while the phrase "*at least*" indicates a minimum six-month absence, i.e., that such an absence was certain. And it is unclear whether "normal duties and responsibilities" refers to classroom teaching only, or to all other kinds of work available through DCPS. But we need not decipher the best conceivable interpretation of the December 4 letter because Dr.

---

[4] Indeed, there would have been no reason for DCPS to inform Ms. Turner in its February 16, 2016, accommodation letter that it could not reassign her to a non-teaching central office position at that time if it did not believe that Ms. Turner was seeking to return to work at the conclusion of her FMLA leave.

Alim's subsequent December 15 report cleared up any confusion.[5]  In that later report, Dr. Alim opined that the duration of Ms. Turner's incapacity was "3 months," until "February 28, 2016," i.e., the approximate conclusion of her initial stretch of leave.  The December 15 report from Dr. Alim should have alerted DCPS that its contrary interpretation—that Dr. Alim thought Ms. Turner could not return to work in any capacity for six months—was dubious, at best.  And it would have been easy for DCPS to clear up any confusion by taking the simple step of contacting Dr. Alim and asking her opinion on the matter, as Ms. Turner had authorized, and which Dr. Alim had expressly invited DCPS to do.

As for Ms. Turner's application for long-term disability, it cannot bear the weight OHR places on it.  Ms. Turner's long-term disability application says little about her ability to return to work if she were provided a reasonable accommodation, such as reassignment to a central office position.  *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) ("[A]n ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well

---

[5]  Dr. Alim's December 4, 2015 letter stated that Ms. Turner was scheduled for a follow-up appointment on December 15, 2015, at which point she would be re-evaluated.  Given the December 15, 2015 signature date on the physician's report included within Ms. Turner's FMLA application, it appears this report was completed during Ms. Turner's scheduled follow-up appointment.

prove consistent with a[] [Social Security Disability Insurance] claim that the plaintiff could not perform her own job (or other jobs) *without* it.") (emphasis in original); *Whitbeck v. Vital Signs, Inc.*, 116 F.3d 588, 591 (D.C. Cir. 1997) ("Where . . . an insurer makes disability determinations without regard to whether the insured can work with reasonable accommodation, an award of benefits does not preclude a later claim that the insured can work with accommodation."). Indeed, when OHR asked Ms. Turner why she applied for long-term disability insurance, Ms. Turner explained that she did so because she was concerned about her ability to pay her living expenses if she were to remain on unpaid leave, not because she was unable to work. This is not to say that it is impermissible for OHR to consider Ms. Turner's application for long-term disability, but it should at the very least consider her explanation for doing so, particularly at the probable cause stage.

While there are lingering factual disputes about Ms. Turner's capacity to return to work at the end of February 2016, we reiterate that Ms. Turner was not required to "disprove [DCPS's] version of events" at the probable cause stage of the proceedings. She had to establish only that her "version of events was reasonable." *Sparrow*, 74 A.3d at 706. Based on the record evidence detailed

above, Ms. Turner satisfied this burden. OHR's contrary view is thus not supported by substantial evidence in the record.

## B.

We now turn to whether DCPS's offer of extended unpaid leave through the end of June 2016 was a reasonable accommodation despite Ms. Turner's request to be reassigned to a non-teaching central office position. While OHR concluded that extended leave was a reasonable accommodation, that conclusion was premised on its mistaken view that there was no probable cause to believe Ms. Turner was capable of returning to work in any capacity before June 2016. DCPS's defense of OHR's conclusion on appeal is similarly premised on its view "that [Ms.] Turner would not be able to work during the remainder of the school year [ending in June 2016] and thus [DCPS] reasonably accommodated her by extending her leave until then."

Having now rejected the faulty premise for OHR's reasonable accommodation conclusion, we leave it for OHR to determine whether unpaid leave was reasonable in light of the record before it. On remand, OHR should consider Ms. Turner's assertion that DCPS failed to engage in an interactive process with her regarding the possibility of reassignment to a non-teaching central

office position in the months and days leading up to the February termination of her FMLA leave. *Sparrow*, 74 A.3d at 705 ("Although there is no per se liability under the ADA if an employer fails to engage in an interactive process, the failure to do so is prima facie evidence that the employer may be acting in bad faith.") (quoting *Cravens v. Blue Cross & Blue Shield*, 214 F.3d 1011, 1021 (8th Cir. 2000)) (internal quotations and footnote omitted).

Finally, OHR suggested that leave was a reasonable accommodation because it was paid, rather than unpaid. DCPS does not defend OHR's reasonable accommodation conclusion on this basis, for good reason. The evidence shows that Ms. Turner was unpaid during her FMLA leave, but that she began receiving paychecks in March 2016 after her leave was extended. Believing the checks were issued in error, Ms. Turner contacted DCPS. Far from correcting her on that point and telling her to deposit or cash them, she was apparently instructed to return the money. We do not have occasion to, nor do we mean to, finally resolve the matter. Suffice it to say it appears from the record—at least sufficiently to satisfy the probable cause standard—that Ms. Turner's extended leave from the end of February through June was unpaid.

**III.**

We reverse the Superior Court's judgment and remand this case to OHR for further proceedings consistent with this opinion.

*So ordered.*