*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CV-527

GERREN PRICE, APPELLANT,

V.

BOARD OF ETHICS AND GOVERNMENT ACCOUNTABILITY, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CAP5346-19)

(Hon. Shana Frost Matini, Associate Judge)

(Submitted October 5, 2021      Decided November 10, 2022)

*Erik James Williams* for appellant.

*Karl A. Racine*, Attorney General for the District of Columbia, with whom *Loren L. AliKhan*, Solicitor General (at the time of submission), *Caroline S. Van Zile*, Principal Deputy Solicitor General (at the time of submission), *Carl J. Schifferle*, Deputy Solicitor General, and *Stacy L. Anderson*, Senior Assistant Attorney General, were on the brief for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and EASTERLY and MCLEESE, *Associate Judges*.

BLACKBURNE-RIGSBY, *Chief Judge*: Appellant Gerren Price appeals the trial court's order affirming the Board of Ethics and Government Accountability's ("BEGA") determination that Mr. Price violated the District's Code of Conduct

("Code of Conduct"). BEGA determined that as a supervisory public official for the District of Columbia Mr. Price improperly "advanced" the resume of his sister-in-law for a position within his agency and failed to submit a written notice of recusal. *See* 6-B D.C.M.R. § 1806.3 (2014); 6-B D.C.M.R. § 1806.6 (2014).[1]  Mr. Price argues in this appeal that 1) BEGA's decision lacked evidentiary support; 2) BEGA incorrectly interpreted the term "advance" in its regulations; and 3) his actions did not amount to a "hiring decision."  We agree and reverse the trial court's order and conclude that Mr. Price's conduct did not fall within a reasonable definition of "advance" and "hiring decision" under the regulation because his actions were ministerial and non-preferential and no one involved in the actual hiring decision was aware of Mr. Price's relationship to the applicant.  We further vacate the associated fine totaling $1,500 and restitution in the amount of $26,182.10 assessed by BEGA.

---

[1] 6-B D.C.M.R. § 1806 was updated with no substantive changes, effective January 31, 2020.  We will refer to the numeration found in the 2014 version of 6-B D.C.M.R. § 1806, as the 2020 regulation appears to contain a typo, where § 1806.1 is repeated.

## I. Factual & Procedural Background

At the time of the alleged violations, Mr. Price was the Deputy Director of the Office of Youth Programs ("OYP") for the District of Columbia Department of Employment Services ("DOES"). OYP is responsible for administering the District of Columbia's Summer Youth Employment Program ("SYEP"). In early 2015, SYEP was expanded to include a new age group of young adults between the ages of twenty-two and twenty-four. The expansion required OYP to hire temporary case managers on short notice. To facilitate the urgent hiring, a DOES Human Resources Manager solicited Mr. Price's assistance in advertising and filling the new positions.

On June 22, 2015, Mr. Price distributed an email to all OYP staff, with the subject line "URGENT – Job Opportunity." The email informed recipients that DOES was hiring case managers and provided the requirements for the applicants. In addition, all resumes were to be emailed to Mr. Price before 5:00 p.m. the next day, per the direction of the DOES Human Resources Manager. Approximately three hours after Mr. Price sent the email, Desiree Ward, Mr. Price's sister-in-law, responded with the subject line "Desiree Ward-Resume," and included as an attachment her resume. Mr. Price responded to the email, "Thank you, Ms. Ward. I

will forward your resume to our HR Department for consideration. You will hear from us soon."

The following day, the Human Resources Manager emailed Mr. Price asking him to "[p]lease send [] your employees ASAP," because the manager needed to submit finalized packets to the District's Department of Human Resources the following day. Mr. Price printed all fifty to sixty resumes he received, including Ms. Ward's resume, and gave them to his team to review for selection of ten to fifteen applicants. Mr. Price did not inform anyone that Ms. Ward was a relative. His team selected between ten and fifteen resumes, which included Ms. Ward's resume, and a member of his team then passed the resumes on to the Human Resources Manager.

Human Resources then began the hiring process. The Human Resources Manager contacted Ms. Ward via email, sending her an application package to be completed and returned. Ms. Ward returned her completed application, listing Mr. Price as her brother-in-law. Ms. Ward was offered the position, accepted it, and began working as a case manager on July 6, 2015.

In November of 2015, BEGA initiated an investigation into Mr. Price after being notified via an anonymous email that he and Ms. Ward were relatives.

Following the investigation, Mr. Price was formally charged with three counts of violating the District's Code of Conduct: (1) Directly or Indirectly Making a Hiring Decision Regarding a Position within his Own Agency with Respect to a Relative (advancing sister-in-law's resume through hiring process), 6-B D.C.M.R. § 1806.3; (2) Directly or Indirectly Making a Hiring Decision Regarding a Position within his Own Agency with Respect to a Relative (requesting an extension to the temporary term of employment for his sister-in-law and four other case managers, and signing off on recruitment of the five case managers to be promoted),[2] 6-B D.C.M.R. § 1806.3; and (3) Failing to File a Written Recusal (when his sister-in-law's application first reached his desk), 6-B D.C.M.R. § 1806.6.

In relevant part, 6-B D.C.M.R. § 1806.3 states:

> A public official may not directly or indirectly make a hiring decision regarding a position within his or her own agency with respect to a relative. Specifically, a public official may not appoint, employ, promote, evaluate, interview, or *advance* (or advocate for such actions) any individual who is a relative in an agency in which the public official serves or exercises jurisdiction or control.

---

[2] This "hiring decision" was related to a form requesting personnel action, filed on November 7, 2015, seeking an eight-month extension of Ms. Ward's term of service. Mr. Price's name appeared on the form as the "Requested By"; however, the form was signed by OYP's Associate Director and not Mr. Price.

(emphasis added). Regarding the reporting requirement, 6-B D.C.M.R. § 1806.6 states, "[w]hen the agency contemplates making a hiring decision concerning a relative of a public official within the same agency, the public official must file a written recusal, which shall be included in the relative's official personnel file along with the subject personnel action."

BEGA held a two-day evidentiary hearing and following the hearing issued a written Final Decision determining that violation one related to 6-B D.C.M.R. § 1806.3 and violation three regarding 6-B D.C.M.R. § 1806.6 were meritorious.[3] With respect to violation one, BEGA concluded that Mr. Price, a public official, directly and indirectly participated in the hiring of his sister-in-law by "advancing" her resume through the hiring process for a position as a case manager in his agency in violation of 6-B D.C.M.R. § 1806.3. BEGA acknowledged that the term "advance" in 6-B D.C.M.R. § 1806.3 was not defined in the regulation. BEGA therefore applied the definition of "advance" found in the Fifth Edition of Black's Law Dictionary (1979): "to move something forward in position, time or place." Further, BEGA determined that Mr. Price both intended to advance Ms. Ward's

---

[3] With regard to violation two, BEGA determined that Mr. Price did not make the decision to extend the term for temporary employees. *See* 6-B D.C.M.R. § 1806.3. The decision was made by officials in the Executive Office of the Mayor.

resume by telling her that he would forward it on to human resources and followed through with advancing her resume when he included her resume with the 50-60 resumes given to his team. Finally, with respect to violation three, BEGA concluded that Mr. Price failed to file a written recusal while participating in the hiring process of a family member. As a result of its decision, BEGA ordered Mr. Price to pay a civil penalty of $1,500 for violation one, restitution in the amount of $26,182.10 for violation one, and a civil penalty of $1,500 for violation three.

Mr. Price filed a Petition for Review of BEGA's Final Decision in Superior Court[4] where he asserted that BEGA lacked substantial evidence supporting the findings that Mr. Price directly or indirectly made a hiring decision regarding a relative. Mr. Price's challenge focused on BEGA's interpretation of 6-B D.C.M.R. § 1806.3, that receiving Ms. Ward's resume and then passing it along "advanced" his sister-in-law's resume through the hiring process, and amounted to a "hiring decision" in violation of the regulation. Mr. Price contended that BEGA misinterpreted the meaning of "advanced" and "hiring decision," within the context of the statute and regulations. The Superior Court affirmed BEGA's Final Decision, and determined that "BEGA applied the ordinary and plain meaning to the terms

---

[4] D.C. Code § 1-1162.17 provides that appeals of any order from BEGA "shall be made to the Superior Court of the District of Columbia."

'hiring decision' and 'advancement,'" and concluded that BEGA's interpretation of the terminology was "neither wrong nor plainly inconsistent with legislative intent." The trial court concluded that although Mr. Price did not make the "ultimate decision" to hire, he advanced Ms. Ward's resume to be considered for a position within his agency. This appeal followed.

## II. Discussion

In his appeal before this court, Mr. Price contends that the trial court erred in affirming BEGA's Final Decision. He argues that BEGA's findings that he made a nepotistic hiring decision for a position within the agency at which he was employed was not supported by substantial evidence. Mr. Price focuses his arguments on: (1) the definition BEGA applied to the term "advance," in 6-B D.C.M.R. § 1806.2; and (2) whether his actions amounted to a "hiring decision," as defined in 6-B D.C.M.R. § 1806.1(b).[5] In response, BEGA asserts that we should defer to the definition of

---

[5] On appeal, Mr. Price only asks the court to consider "[w]hether the lower court erred by ruling that there was substantial evidence to support the Board of Ethics and Government Responsibility's findings of fact as to Count I of the Agency's Notice of Violation." Accordingly, we limit our discussion to Count I and do not address Count III, which is not raised in this appeal.

"advance" it applied to the regulation and that under that definition, Mr. Price's actions amounted to advancing Ms. Ward as part of a hiring decision.

"We review a Superior Court ruling [of] an agency decision in the same fashion in which we would review an agency decision if it were appealable directly to us." *Sparrow v. D.C. Office of Human Rights*, 74 A.3d 698, 703 (D.C. 2013) (quoting *D.C. Off. of Hum. Rts. v. D.C. Dep't of Corr.*, 40 A.3d 917, 923 (D.C. 2012)). We "will affirm the agency's ruling unless it is arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law." *McCamey v. D.C. Dep't of Emp. Servs.*, 947 A.2d 1191, 1196 (D.C. 2008) (en banc); *see Reyes v. D.C. Dep't of Emp. Servs.*, 48 A.3d 159, 164 (D.C. 2012).

We first determine whether BEGA properly interpreted 6-B D.C.M.R. § 1806.2(b), specifically, whether it was reasonable and consistent with the statutory language to define the term "advance" using a dictionary meaning in ultimately interpreting the term "hiring decision." This court has the final review of issues of statutory construction and reviews such questions of law de novo. However, we give deference to an agency's interpretation of its governing statute and regulation, "unless its interpretation is unreasonable or inconsistent with the statutory language or purpose." *D.C. Office of Human Rights*, 40 A.3d at 923 (citations omitted).

In its Final Decision, BEGA acknowledged that "advance" was not defined in the regulations, so it applied the Black's Law Dictionary definition, meaning "to move something forward in position, time or place." *Advance*, BLACK'S LAW DICTIONARY (5th ed. 1979). Appellant argues that "advance" should be more specifically defined as "to raise to a higher rank," and refers to the *Merriam-Webster* dictionary. *Advance*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/advance; https://perma.cc/95CA-RZXR (last visited June 1, 2022).

The regulations which govern BEGA's interpretation of the statute it administers and enforces are found in 6-B D.C.M.R. § 1806, which provide for the "Restrictions on the Employment of Relatives (Nepotism)." Specifically, 6-B D.C.M.R. § 1806.3 prohibits a public official from making a direct or indirect "hiring decision regarding a position within his or her own agency with respect to a relative."[6] The regulation defines a "hiring decision" as "selecting, appointing,

---

[6] Under 6-B D.C.M.R. § 1806.2, "public official" is defined "as an officer, employee, or any other individual in whom authority by law, rule, or regulation is vested, or to whom the authority has been delegated to select, appoint, employ, promote, reassign, demote, separate, or recommend individuals for any of these actions." 6-B D.C.M.R. § 1806.2(a).

employing, promoting, reassigning, *advancing*, or advocating a personnel action."
6-B D.C.M.R. § 1806.2(b) (emphasis added). Section 1806.3 goes on to specify that
"a public official may not appoint, employ, promote, evaluate, interview, or *advance*
(or advocate for such actions) any individual who is a relative in an agency in which
the public official serves or exercises jurisdiction or control." (emphasis added). A
public official's violation "shall constitute disciplinary cause and subject the public
official to disciplinary action, up to, and including removal." 6-B D.C.M.R.
§ 1806.3. Additionally, in the event the public official's "agency contemplates
making a hiring decision concerning a relative of a public official within the same
agency, the public official must file a written recusal, which shall be included in the
relative's official personnel file along with the subject personnel action." 6-B
D.C.M.R. § 1806.6.

The first step in statutory interpretation is to determine if the "language is
plain and admits of no more than one meaning." *Odumn v. United States*, 227 A.3d
1099, 1102 (D.C. 2020) (quoting *Peoples Drug Stores., Inc. v. District of Columbia*,
470 A.2d 751, 753 (D.C. 1983) (en banc)). Even if there is "superficial clarity," we
may look beyond plain meaning: (1) where "a review of the legislative history or an
in-depth consideration of alternative constructions that could be ascribed to statutory
language . . . reveal[s] ambiguities that the court must resolve;" (2) where "the literal

meaning of [the] statute . . . produces absurd results;" (3) so that, "whenever possible, the words of the statute are . . . construed to avoid obvious injustice;" or (4) in order "to effectuate the legislative purposes, as determined by a reading of the legislative history or by an examination of the statute as a whole." *Id*.

When interpreting a term, here it is "advance," that appears as part of the definition of another term, "hiring decision," we keep in mind the ordinary meaning of the main term being defined. *See Borden v. United States*, 141 S. Ct. 1817, 1830 (2021). The actions Mr. Price took of printing out a copy of Ms. Ward's resume along with 50 to 60 other resumes sent to him from other applicants in response to an email he sent office wide to all interested applicants, does not evince advancement of his sister-in-law's resume as part of a "hiring decision." Similarly, forwarding Ms. Ward's resume along with a group of 50 to 60 other resumes to staff typically charged with evaluating resumes does not amount to advancing a familial applicant in making a "hiring decision." Mr. Price's actions were ministerial as he was a conduit in delivering a batch of resumes.

Words must also be interpreted in context, where "we do not read statutory words in isolation; the language of surrounding and related paragraphs may be instrumental to understanding them." *Am. Studies Assoc. v. Bronner*, 259 A.3d 728,

745 (D.C. 2021); *see also Bronner*, 259 A.3d at 745 ("Our focus cannot be too narrow, for the plainness or ambiguity of statutory language is determined not only by reference to the language itself, but also by considering the specific context in which that language is used, and the broader context of the statute as a whole.") (cleaned up). BEGA's selected definition also does not support the idea that "a word . . . is known by the company it keeps." *Sivaraman v. Guizzetti & Assocs., Ltd.*, 228 A.3d 1066, 1075 n.13 (D.C. 2020) (internal quotation marks omitted). Here, the term "advance" in § 1806.3 should be read to fit in with the other terms in that provision. Those terms focus on employment actions, and the purely physical definition of "advance" taken from an old version of Black's Law Dictionary does not fit within the employment context. As Mr. Price has pointed out there are other dictionary definitions that can be considered, and our cases have cautioned against placing too much weight on dictionary definitions considered out of context. *See, e.g.*, *Expedia, Inc. v. District of Columbia*, 120 A.3d 623, 631 (D.C. 2015) ("Courts must not make a fortress out of the dictionary . . . .") (internal quotation marks omitted). Therefore, it is far from plain that the dictionary definition of "advance" used by BEGA governs in interpreting the term "hiring decision." *Cf. Lawson v. Dep't of the Air Force*, 2020 MSPB LEXIS 1097, *1, *7 (Mar. 18, 2020) (concluding that approval of a sister's promotion within the same organization constituted nepotism because three was a deliberate act and direct involvement in the hiring

process which created "undue command influence"); *Alexander v. Dep't of the Navy*, 24 M.S.P.R. 621, 625 (1984) (finding that appellant did not "advocate" on his daughter's behalf by merely asking generally about available positions within his agency and where his daughter's application was submitted through a third-party).

The definition of "advance" applied by BEGA as part of the definition of "hiring decision" is also overly broad to accomplish the purpose of the regulation. A primary concern for the Council of the District of Columbia's Committee on Government Operations (the "Committee") was to thwart the hiring of underqualified individuals in high ranking government positions, particularly related to political appointments. *See* Report on Bill No. 19-476 before the Committee on Government Operations, Council of the District of Columbia, at 1, 2 (Dec. 5, 2011). The Committee investigated the personnel practices of the Executive branch during a previous administration and following the investigation, the Committee introduced changes to the regulations to "curb the behavior that [ ] [led] to improper hiring practices," which included senior officials appointing relatives to Excepted Service positions "result[ing] in unqualified leaders, the misappropriation of public funds and a violation of public trust." *Id.* at 2-3, 5-6. The Committee introduced changes to the regulations that included adding the prohibition of nepotistic hiring for all levels of District of Columbia government employment, to include Excepted

Service, where previously the nepotism prohibition only applied to Career Service employees. *Id.* at 3. The Committee sought to "[c]larify[] restrictions on nepotism and unify[] federal and local law [to] reestablish the public trust and . . . autonomy," in order to curb similar behavior from occurring. *Id.* at 5. The Committee determined that enforcement of the nepotism violations at the local level were insufficient because the prohibition only applied to Career Service positions. *Id.* at 3, 5. Therefore, the Council added the prohibition of "nepotism in all District government Employment." *Id.* at 7. The Committee proposed that this could be accomplished by setting up "clear and specific guidelines for hiring in the Excepted Service and generally in the government" to ensure appointees were well qualified and sufficiently vetted, which would prevent "any instances of unfair hiring practices involving family members of senior officials from occurring in the future." *Id.*; *see also Prohibited Personnel Practice 7: Nepotism*, U.S. Merit Sys. Prot. Bd., https://www.mspb.gov/ppp/7ppp.htm; https://perma.cc/L9AR-AFBZ (last accessed Aug. 25, 2022) ("In order to limit even the appearance of improper favoritism towards relatives, this provision assures that public officials cannot use their influence to advance their relatives in hiring or career advancement.").

In determining whether an employee "advance[d]" a relative to be hired for a position within the District government and within the plain meaning of "hiring

decision" in our statute, BEGA should consider and determine whether and to what extent preference is expressed by the employee. BEGA's broad application of the definition of "advance" prohibits actions that are not inherently preferential or unfair, which is inconsistent with the purpose of the nepotism restriction in the regulation. To accomplish the regulation's intended purpose and avoid penalizing acts lacking an improper aim, the prohibited nepotistic hiring actions should exhibit preference for a particular applicant because of familial relation. The interpretation of "advance" applied by BEGA would result in unreasonable sanctions against employees who were not using their position to give preferential hiring treatment on behalf of a relative. For example, putting a relative's resume into an office mailbox would be considered "advancing" under BEGA's interpretation; whereas, under the interpretation reached here, such act would not amount to a "hiring decision" as it fails to convey a preference for a particular individual.

Here, the record on appeal lacks substantial evidence to support that Mr. Price committed any of the acts listed in the regulation's definition which constitute a "hiring decision" because his actions were ministerial and non-preferential and no one involved in the actual hiring decision was aware of Mr. Price's relationship to the applicant. Though he was a public official, his actions of collecting and printing a batch of resumes, and then forwarding them on for assessment by his staff, without

expressing any preference for a particular individual were ministerial in nature and did not constitute a violation of the Code of Conduct. His actions also lacked any indication of preference that would ensure his sister-in-law's resume was selected for hiring. Furthermore, no one involved in the actual hiring decision was aware of Mr. Price's relationship to the application.

In conclusion, we reverse the trial court's order sustaining BEGA's determination that Mr. Price violated 6-B D.C.M.R. § 1806.3. We conclude the record lacks substantial evidence that Mr. Price "advanced" his sister-in-law's resume in a manner that was non-ministerial, that expressed she receive preferential treatment for a position within the agency in which he was employed, or that disclosed their relationship. As such, we vacate the civil penalty of $1,500 and restitution in the amount of $26,182.10 assessed in connection with violation one.

*So ordered.*